COMMONWEALTH *vs.* PAUL H. DUNIGAN & others.[1]

Suffolk. March 3, 1981. — July 1, 1981.

Present: HENNESSEY, C.J., BRAUCHER, LIACOS, & NOLAN, JJ.

*Search and Seizure,* Warrant. *Practice, Criminal,* Interlocutory appeal. *Supreme Judicial Court,* Superintendence of inferior courts.

The Commonwealth has no right of appeal under either G. L. c. 278, § 28E, or Mass. R. Crim. P. 15 (b) (2) from a determination by a single justice of this court that the administration of justice would not be facilitated by allowing an interlocutory appeal of an order suppressing evidence in a criminal proceeding [4-5]; however, the Commonwealth in an appropriate case may seek review of the single justice's ruling by a petition to the full court under G. L. c. 211, § 3 [5].

A single justice of this court did not abuse his discretion in concluding that the administration of justice would not be facilitated by allowing the Commonwealth's interlocutory appeal of an order suppressing all evidence seized pursuant to a search warrant which authorized the seizure from an "adult bookstore" of multiple copies of each item described and "[o]ther X-rated films and cassette tapes" and which resulted in the indiscriminate seizure of every copy of every book and magazine found in the store. [6-7]

INDICTMENTS found and returned in the Superior Court Department on December 11, 1979.

Motions to suppress evidence were allowed by *Young,* J.

---

[1] Steven Wereskla and Barry Strykowski.

An application by the Commonwealth for an interlocutory appeal was denied by *Kaplan, J.,* in the Supreme Judicial Court for the county of Suffolk.

*James W. Sahakian,* Assistant District Attorney, for the Commonwealth.

*Efthemios J. Bentas (Regina L. Quinlan* with him) for the defendants.

HENNESSEY, C.J. The primary question to be decided is whether and under what circumstances the Commonwealth can appeal the determination by a single justice of this court that the administration of justice would not be facilitated by allowing the interlocutory appeal of an order suppressing evidence in a criminal proceeding. We conclude that, in the circumstances shown here, there is no right of appeal by the Commonwealth under the terms of the controlling statute, G. L. c. 278, § 28E, and the rule of court, Mass. R. Crim. P. 15 (b) (2), 378 Mass. 884 (1979). We conclude, further, that the Commonwealth in an appropriate case could seek relief from the single justice's ruling by a petition under G. L. c. 211, § 3, addressed to the full court. However, even if we chose to treat the claim of appeal in this case as a proceeding under c. 211, § 3, we conclude that the Commonwealth, in the circumstances shown here, would not be entitled to relief.

On November 15, 1979, a Massachusetts State police detective, assigned to the office of the district attorney for the Northern District, appeared before a Superior Court judge and obtained a search warrant for the premises of the Towers News Stand in Lowell. The warrant ordered the seizure of twenty-three categories of material, including films, video cassette tapes, printed matter, and business records. The majority of the categories identified matter to be seized by title or publisher, and directed the seizure of multiple copies of each item described.[2] Paragraph sixteen of the warrant, in its entirety, ordered the seizure of "[o]ther X-rated films and cassette tapes."

---

[2] See note 7, *infra.* Several paragraphs in the warrant described the material to be seized only by its contents.

The warrant was executed on the same day that it was issued. Over 1,000 separate titles were seized in a search that lasted for more than nine hours. Every copy of every book and magazine found within the "adult bookstore" portion of a combination grocery and book store was confiscated. A moving van was called to haul the seized books and magazines. Almost 1,400 cartons of materials, weighing 45,000 pounds, were removed from the store. A detailed return was filed consisting of approximately 475 typewritten pages.

On December 11, 1979, indictments were returned against each defendant. The indictments charged possession with intent to disseminate obscene matter consisting of seven different items.[3] The defendants moved to suppress all the evidence seized under the authority of the warrant. The Superior Court judge found that "the warrant appears to have resulted in the indiscriminate seizure of everything within and upon the premises searched, including magazines and books to which it does not appear directed as well as a vast number of books which cannot, under the governing laws, be the subject of criminal prosecution" and that "the purpose of this search went far beyond the appropriate goal of reducing evidence to police custody. . . . The conclusion is inescapable that what the government agents here attempted was an unconstitutional prior restraint on speech — a procedure that offends against the First Amendment of the Constitution of the United States every bit as much as the means used (an indiscriminate search and seizure pursuant to an over-broad warrant) is unreasonable under the Fourth Amendment." The judge allowed the motion to suppress in its entirety.

The Commonwealth applied to a single justice of this court for interlocutory review of the suppression order pursuant to G. L. c. 278, § 28E, and Mass. R. Crim. P. 15 (b) (2). The single justice determined that the administration

---

[3] The items are four films and three publications, and are identical for each defendant.

of justice would not be facilitated by granting leave to appeal. The Commonwealth here appeals that determination, asserting that if the single justice's ruling is left undisturbed the Commonwealth has no case and verdicts will be directed against it.

The Commonwealth claims to find this right to appeal the single justice's determination in G. L. c. 278, § 28E,[4] c. 211, § 5,[5] and Mass. R. Crim. P. 15 (b) (2).[6] Upon examination of these three sources, it is apparent that, when evidence is suppressed by a judge, the Commonwealth has the right to apply to a single justice for leave to appeal. The single justice, if he determines that the administration of justice would be facilitated, may do one of three things: hear the appeal himself, report it to the Appeals Court, or report it to this court. No provision has been made for this court to hear the Commonwealth's interlocutory appeal, unless the single justice first determines that further proceedings would facilitate the administration of justice. To allow the Commonwealth to appeal from this determina-

---

[4] General Laws c. 278, § 28E, as appearing in St. 1979, c. 344, § 45, in pertinent part states: "An application for an appeal from a decision, order or judgment of the superior court determining a motion to suppress evidence prior to trial may be filed in the supreme judicial court by a defendant or by and on behalf of the commonwealth by the attorney general or a district attorney. If such application is denied, or if such application is granted but the interlocutory appeal is heard by a single justice, the determination of the motion to suppress evidence shall be open to review by the full court after trial in the same manner and to the same extent as determinations of such motions not appealed under the interlocutory procedure herein authorized."

[5] General Laws c. 211, § 5, as appearing in St. 1973, c. 1114, § 47, states: "Questions of law arising upon exceptions, report, or appeal shall be heard and determined by the full court."

[6] Rule 15 (b) (2), 378 Mass. 884 (1979), in pertinent part states: "A defendant or the Commonwealth shall have the right and opportunity to apply to a single justice of the Supreme Judicial Court for leave to appeal a decision, order, or judgment determining a motion to suppress evidence prior to trial. If the single justice determines that the administration of justice would be facilitated, he may grant that leave and may hear the appeal or may report it to the full Supreme Judicial Court or to the Appeals Court."

tion of the single justice and to obtain a review of the merits of the suppression order would make a nullity of the function of the single justice under Mass. R. Crim. P. 15(b) (2). If the single justice concludes that the administration of justice would not be facilitated by reporting the appeal to the full bench, the Commonwealth cannot proceed as if no determination had been made. Cf. *Commonwealth* v. *Vaden*, 373 Mass. 397, 399 (1977). To allow such a procedure would introduce meaningless delay in what are, by definition, questions in need of quick resolution. Further, to allow an interlocutory appeal would clearly contravene the intent of the Legislature, as we construe that intent from a reading of the entire c. 278, § 28E, including the several paragraphs of that section which are not directly applicable here. Cf. *Commonwealth* v. *Gaulden*, 383 Mass. 543, 550 (1981).

Nevertheless, the Commonwealth is not totally without recourse where it is of the opinion that review by the full bench is necessary. If the single justice declines to report the matter to the full court, a petition by the Commonwealth to the full court under G. L. c. 211, § 3, seeking review of the order of the single justice, is appropriate. The inquiry of the full court will be whether the single justice has abused his discretion. See *Commonwealth* v. *Cook*, 380 Mass. 314, 321 (1980). Cf. *Commonwealth* v. *Hodge (No. 1)*, 380 Mass. 851 (1980); *Commonwealth* v. *Allen*, 377 Mass. 674 (1979). See generally K.B. Smith, Criminal Practice and Procedure § 1186 (1970). We afford relief under c. 211, § 3, only, as in the instant circumstances, where no appeal is available, and then we afford relief sparingly. "Only in the most exceptional circumstances will we review interlocutory rulings in criminal cases under our general superintendence powers. . . . We do so here because of important practical issues presented, and because . . . [the order below] if error, might be irremediable, and possibly not curable . . . since the [Commonwealth] could not thereafter be placed in statu quo." *Gilday* v. *Commonwealth*, 360 Mass. 170, 171 (1971).

To avoid the possibility here of a redundant approach to this court by the Commonwealth, we now consider the matter under c. 211, § 3. In order to determine whether there has been an abuse of discretion, a preliminary assessment of the merits must be made. The warrant was defective not only in its authorization to seize multiple copies of publications,[7] but also in its "catch-all" clause authorizing the seizure of "[o]ther X-rated films and cassette tapes." Even if all of the other provisions in the warrant were limited and precise — which they decidedly were not — this greatly excessive blanket provision is alone sufficient to convert the warrant into a general warrant. Such warrants were historically used as an adjunct to a system for the suppression of objectionable publications, and the indignation of the colonists toward these warrants provided the basis for the limitation of governmental power found in the Fourth Amendment to the United States Constitution. See *Marcus* v. *Search Warrant,* 367 U.S. 717, 724, 729 (1961). One measure of the warrant's compliance with the constitutional requirement of specificity is the understanding of the warrant by the executing officers. *Commonwealth* v. *Mascolo,* 6 Mass. App. Ct. 266, 271, cert. denied, 439 U.S. 899 (1978). The execution of the warrant in this case clearly shows that the provisions of the warrant were not crafted with the precision needed to protect against its extraordinary execution by overzealous officers. Thus the single justice might properly have discerned in this case a gross abuse of the power conferred upon government agents by a

---

[7] No clause limits the seizure to single copies, but rather the warrant speaks in terms of "any copies," "other films," and "any other publications." Such phrases are used twenty-three times in the warrant. "Courts will scrutinize any large scale seizure of books, films, or other materials presumptively protected under the First Amendment to be certain that the requirements of [*A Quantity of Copies of Books* v. *Kansas,* 378 U.S. 205 (1964)] and [*Marcus* v. *Search Warrant,* 367 U.S. 717 (1961)] are fully met." *Heller* v. *New York,* 413 U.S. 483, 491-492 (1973). Seizing publications to block their distribution, as was done here, is a very different matter from seizing a single copy for the bona fide purpose of preserving it as evidence in a criminal proceeding. *Id.*

search warrant. Despite the existence of a detailed and efficient means for prosecuting individuals who disseminate allegedly obscene materials, see, e.g., G. L. c. 272, § 28C et seq., and *Commonwealth v. 707 Main Corp.*, 371 Mass. 374 (1976), the Commonwealth made little effort to proceed within the clear confines of the system provided.

The Commonwealth's major complaint is that the Superior Court judge suppressed all materials seized pursuant to the warrant, rather than severing and supporting the warrant's valid portions.[8] The single justice of this court may appropriately have relied on the fact that similar evidence was available to the Commonwealth which might still be used by it in the prosecution of these indictments: viz., items purchased from the defendants and submitted by the State police in support of their application for a warrant. Indeed, these items, which presumably will be admissible at the trial, account for five of the seven items upon which the indictments rest.

Our limited appraisal under our general superintendence powers, as spelled out in G. L. c. 211, § 3, leads us to decide that the single justice was well within the bounds of his discretion to conclude that the administration of justice would not be facilitated by further interlocutory rulings in this case.

*Appeal dismissed.*

---

[8] Of the more than 1,000 titles seized, perhaps as few as ten and certainly no more than twenty titles appear to have been seized pursuant to the valid portions of the warrant, and even these otherwise valid sections of the warrant authorized the seizure of multiple copies. See note 7, *supra*.