COMMONWEALTH vs. ERNEST BARBOSA.

Essex.  January 6, 1987. — May 12, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*Rape. Practice, Criminal,* Instructions to jury. *Constitutional Law,* Confrontation of witnesses. *Evidence,* Fresh complaint, Cross-examination. *Witness,* Victim.

Where, at the trial of indictments for assault with intent to rape and assault and battery, the only issue was the defendant's intent when he assaulted and beat the victim, and where the defendant made no objection after the judge's supplemental instructions to the jury, which did not explicitly define the elements of rape, the instructions, viewed as a whole, created no substantial likelihood of a miscarriage of justice, where they adequately conveyed the elements of assault with intent to rape and left to the jury the issue of the defendant's intent. [843-845]

The record of a criminal trial, including a videotape recording of the proceedings, did not support the defendant's contention that he was deprived of his constitutional right to confront the main witness against him by reason of the circumstance that the limited language skills of the victim, a deaf-mute, caused difficulty in interpretation on cross-examination, where the victim did respond to counsel's questions and the inconsistencies in her answers were before the jury. [845-846]

There was no merit to a defendant's contention on appeal from convictions of assault and battery and assault with intent to rape, that he was denied the right effectively to cross-examine the victim, a deaf-mute who did not understand the concept of the date "July 9" but did understand "a little [while] before," where defense counsel chose not to pursue his questioning, without specifying the date, as to the time and place of the incident. [847]

At the trial of a criminal case, where the defendant clearly established through cross-examination evidence from which to argue his innocence, he was not deprived, by reason of the victim's limited language skills, of his right to confront the main witness against him. [847-848]

At the trial of indictments, including assault with intent to rape, there was no error in the admission in evidence of fresh complaint testimony, accompanied by proper instructions to the jury. [848-849]

INDICTMENTS found and returned in the Superior Court Department on February 3, 1983.

The cases were tried before *John T. Ronan, J.*

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Carol A. Donovan,* Committee for Public Counsel Services, for the defendant.

*Lila Heideman,* Assistant District Attorney (*Janice W. Howe,* Assistant District Attorney, with her) for the Commonwealth.

ABRAMS, J. After trial by jury, the defendant, Ernest Barbosa, was convicted of assault with intent to commit rape, G. L. c. 265, § 24 (1984 ed.); entering a building, without breaking, and putting a person in fear in nighttime, with intent to commit a felony, G. L. c. 266, § 17 (1984 ed.); and assault and battery, G. L. c. 265, § 13A (1984 ed.).[1] The defendant appeals. He argues that (1) the trial judge's failure to instruct the jury with an explicit definition of rape deprived him of his right to be convicted only on proof beyond a reasonable doubt of every element of the offense charged; (2) he was deprived of his State and Federal rights to confront the main witness against him because the interpreter for the deaf-mute victim had difficulty interpreting questions and answers on cross-examination; and (3) the judge erred in admitting as a fresh complaint the victim's statements made after the assault. We transferred the case from the Appeals Court on our own motion. We affirm.

The facts may be summarized as follows.[2] On the night of July 9, 1982, the victim, a deaf-mute woman,[3] visited a friend,

---

[1] There is some dispute whether the assault and battery conviction is properly before us on appeal. The record reveals that the judge placed that indictment on file. The record does not disclose any objection by the defendant to placing the conviction on file. See *Commonwealth* v. *Delgado,* 367 Mass. 432, 438 (1975). Nevertheless, after rescript, if the defendant moves for sentencing on the assault and battery conviction, the judge should sentence him.

[2] We relate additional evidence in our discussion of the specific claims of errors.

[3] The victim's testimony was offered through an interpreter. After a hearing, the judge found that the interpreter was competent and qualified. See G. L. c. 221, § 92A (1984 ed.).

Madeline Tavares, who lived in an apartment building adjacent to that in which the victim lived. At approximately midnight, the victim left Tavares's apartment building and walked back to her own apartment building. As she opened the door to her second floor apartment, she was grabbed and her hands were pulled behind her back. She turned around and saw the defendant.

The defendant then pushed the victim into the apartment. He punched her in the face, grabbed her around the neck, and squeezed her neck until blood came out of her mouth. The two struggled and fell to the floor, where the defendant bit the victim's ear and shoulder. During the struggle, the defendant pulled on the victim's skirt, tearing off the lowest of three buttons. Although unable to speak, the victim screamed by making a guttural sound. The defendant then ran out of the apartment and down the stairs.

The victim returned to Tavares's apartment. She was in pain. Tavares telephoned the police, and two officers took the victim to the hospital where she was treated for her wounds. The victim spent the night at Tavares's apartment. The next morning, the victim's sister brought the victim to the police station to report the crime.

The defendant made a statement to police admitting that he assaulted and beat the victim in her apartment in the early morning hours of July 10, 1982. According to him, as he was walking by the victim's apartment building, the victim motioned to him from her window to come upstairs. He said that once upstairs, he thought the victim was making fun of him and he therefore beat her. The defendant denied that he attempted to molest the victim sexually or that he intended to rape her.

1. *The judge's instructions to the jury.* The defendant contends that the judge's instruction on assault with intent to rape deprived him of his right to be convicted only on proof beyond a reasonable doubt because it fails to define the term "rape" adequately. Because the defendant conceded the assault and

battery,[4] the issue for the jurors to decide was not force but the defendant's intent.

After the judge's original charge to the jury, defense counsel asked the judge, among other things, to define rape.[5] The judge agreed to do so. In his supplemental instructions, however, he did not explicitly define the elements of the crime of rape. Defense counsel[6] did not object after the supplemental instructions.

Rule 24 (b) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 895 (1979), provides that "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, specifying the matter to which he objects and the grounds of his objection." "[T]he failure of [counsel] to renew [his] objection[ ] to the charge, after the trial judge had given further instructions in response to [the] objection[ ] by [him] and after [his] apparent acquiescence in the amended charge . . . leaves [him] now in no position to contend that the further instructions were inadequate." *Betty Corp.* v. *Commonwealth,* 354 Mass. 312, 321 (1968). See *Bloomberg* v. *Greylock Broadcasting Co.,* 342 Mass. 542, 551 (1961); *Commonwealth* v. *Sheffield,* 10 Mass. App. Ct. 863, 864 (1980); *Commonwealth* v. *Shea,* 4 Mass. App. Ct. 823 (1976). "If [defense counsel] felt that the charge as modified was still insufficient or incorrect he should have again called the judge's attention to the matter." *Duff* v. *Webster,* 315 Mass. 102, 105 (1943). Because counsel did not object after the supplemental instructions, our review is limited to determining whether the instructions create a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967). We conclude that the instructions do not create a substantial risk of a miscarriage of justice.

---

[4] Defense counsel in final argument said, "[The defendant] was there . . and [he] struck [the victim]. . . . Fact, he was here, and whaled the daylights out of her."

[5] "Did you think, Judge, that you should define rape? You did not define rape . . . . I think it should be defined."

[6] Appellate counsel was not trial counsel.

We "view the charge in its entirety since the adequacy of instructions must be determined in light of their over-all impact on the jury." *Commonwealth* v. *Murray,* 396 Mass. 702, 705 (1986), quoting *Commonwealth* v. *Sellon,* 380 Mass. 220, 231-232 (1980). The judge in part instructed the jury as follows: "Did [the defendant] commit the crime; did he assault [the victim], possessing, at the time of that assault, the specific intent that he should have her; that he should carnally know her? Did he assault her, intending the crime of rape?" Although the defendant did not contest the fact that he assaulted and beat the victim, the judge nevertheless instructed the jury on assault and battery. The judge also defined the terms "assault" [7] and "intent." [8] We believe that the instructions read as a whole adequately conveyed to the jury the essential elements of the crime of assault with intent to rape and left to the jury the issue of the defendant's intent when he assaulted and beat the victim. See G. L. c. 265, § 24. We conclude there is no substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman, supra* at 564.

2. *The cross-examination of the victim.* [9] The defendant contends that, because of the limited language skills of the victim, the interpreter was unable to interpret adequately critical questions and answers during cross-examination, thus depriving him of his right to confront the witness against him. [10]

---

[7] The judge said in part, "[An assault is] any manifestation, by a person, of that person's present intention to do another immediate bodily harm."

[8] The judge said in part, "You may be able to infer, and you may be able to conclude what [a person's] intention was . . . . [I]ntent is usually proved . . . from the conduct of an actor."

[9] The defendant requested that the court view the videotape recording of the victim's testimony. The Commonwealth assented to this motion, and we viewed the videotape.

[10] The defendant does not contend that the interpreter was not competent and qualified. The victim communicated through "minimal language skills," a form of sign language which is not formalized and which uses gestures and pantomime. This type of sign language is less structured than the other two forms of sign language, the American sign language system and the signed English system. The American system consists of signs for thoughts and concepts, and the English system consists of a sign for each word,

The defendant asserted that he met the victim at the baptism of a child of one of the victim's sisters and his brother. On cross-examination of the victim, defense counsel questioned the victim about the relationship between the families and the baptism. The victim said she was present at the baptism of a child of one of her sisters, but that the defendant's brother did not participate. She also said that she had not "baptized" her sister's baby. The victim always maintained that she did not know the defendant.

The defendant argues that, because he was unable to question the victim adequately concerning the baptism and the relationship between the families, he was unable to corroborate his contention that the victim invited the defendant into her apartment. The record, however, does not support this contention. The victim answered his questions about the baptism. Her answers were inconsistent. The defendant could have argued that her answers were inconsistent and,.therefore, she was not credible. He did not argue this particular point in his final argument.

"The Confrontation Clause [does not] guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion. To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." *Delaware* v. *Fensterer,* 474 U.S. 15, 21-22 (1985). The inconsistencies in the victim's answers were before the jury.

---

allowing word-for-word translation. The interpreter in this case was trained to interpret nonstandard gestures of deaf people with minimal language skills.

Because the victim did not know the signed English system, the interpreter's translation could not be a verbatim one. It is clear that the interpreter had to rephrase the questions in order to communicate with the victim. After viewing the videotape, we conclude there is no error. The interpreter told counsel when the victim could not understand a concept, a date, or a name. She did this before the jurors. Thus the witness's linguistic limitations were exposed fully to the jury.

Next, the evidence from Tavares, if believed, revealed that on July 9, the day before the attack, the defendant walked by the victim and Tavares as they were sitting on the steps of Tavares's apartment building. The defendant stopped and stared at them. On cross-examination, the interpreter only could communicate the concept of "a little [while] before" and not the date July 9. When the interpreter stated she could not get across to the victim the date "July 9" but could get across the concept of "a little [while] before," defense counsel objected to the witness's testifying and stopped his cross-examination on this point.

Defense counsel argues that, because the witness could not understand the concept of July 9, he was denied the right effectively to cross-examine the witness.[11] We do not agree. Defense counsel could have pursued his examination by trying to question the witness closely as to the time and place of the incident without specifying the date. Defense counsel chose not to do so. That was his choice. The fact that the witness did not understand the concept of dates does not compel the conclusion that there is constitutional error. "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish" (emphasis in original). *Delaware* v. *Fensterer, supra* at 20.

Finally, the defendant cross-examined the victim as to whether her apartment building could be entered without a key. In answer to the question, "If the person who doesn't have the key . . . wants to get in, he presses the button and the buzzer rings and the person in the house let's him in, isn't that right?" the victim responded affirmatively. She also said that because she has a key, she does not have to press the buzzer.

---

[11] The defendant claims that he could not either establish that the victim met him on July 9, thus lending credence to his claim that the victim invited him into her apartment, or establish that the victim denied meeting him, which created an inconsistency between the testimony of the victim and that of Tavares. In his final argument, counsel argued that the victim said she did not remember the July 9 incident, and he argued that there was an inconsistency between the testimony of the victim and that of Tavares.

Defense counsel clearly established that the apartment building in which the victim lived only could be entered by a key or by a tenant's using the buzzer system.[12]                    ;

The judge determined that there was no "insurmountable obstacle" to cross-examining the victim. After reviewing the record and the videotape of the examination of the victim, we agree with the judge's assessment and we conclude that the defendant was not deprived of his right to confront the witness against him.[13]

3. *Fresh complaint testimony.* At approximately 8 A.M. on July 10, the morning after the defendant's assault and battery of the victim, Tavares telephoned the victim's sister, Luz Rodriguez. Rodriguez picked up her sister and brought her to the police station where the victim made a statement. Rodriguez interpreted the statement.

At trial, the Commonwealth asked Rodriguez what the victim told the police. The defendant objected, contending that Rodriguez's testimony could not be admitted as evidence of a fresh complaint because the testimony contained no explicit report of a sexual assault. The judge overruled the defendant's objection and ruled that the question whether the statement was a "fresh complaint" was for the jury.

"In cases of rape . . . testimony reporting statements made by the victim shortly after the attack are universally admitted to corroborate the victim's testimony." *Commonwealth* v. *Bailey,* 370 Mass. 388, 392 (1976). "[The] fresh complaint doctrine is justified on the ground that a victim's failure to make prompt complaint might be viewed by the jury as inconsistent with the charge of sexual assault . . . and in the absence

---

[12] In his final argument, counsel argued that according to the victim entry was either by key or the buzzer. Therefore, he asserted, the victim must have buzzed in the defendant and the defendant's version that the victim invited him in was more credible.

[13] We do not agree with the defendant that there is a "marked contrast between the interpreter's ability to interpret testimony on direct examination and her ability to interpret on cross-examination." The major obstacles in cross-examination were questions in which names and dates were involved. This also was true in the direct examination. According to the interpreter, the victim, who neither reads nor writes, does not understand these concepts.

of evidence of complaint the jury might assume that none was made." *Id.* In cases in which the defendant is charged with a second crime and the complaint extends to both crimes, the fresh complaint may come in, but the defendant, if he so requests, is "entitled to an instruction that the complaint shall be considered only in relation to the rape charge and (only for purposes of corroboration)." *Commonwealth* v. *Blow,* 370 Mass. 401, 406 (1976).

Contrary to the defendant's claim, the victim's statement indicated that after the defendant threw her to the floor, he pulled at the bottom of her skirt and, that, while she was on the floor struggling with the defendant, this pulling ripped the bottom button off her skirt.[14]

Immediately after the fresh complaint testimony, the judge told the jurors that evidence of fresh complaint is "admitted for a limited purpose with respect to alleged incidents of sexual nature . . . . [It is offered] so that you may have it and examine it and see whether or not the story that the complaining witness tells here . . . whether this story is corroborative of it." In his instructions, he emphasized that the fresh complaint testimony only could be used as corroboration on the assault with intent to rape charge. The jurors were instructed that, if they believed that the defendant did not intend to rape the victim, they should not consider that evidence. "[I]t must be presumed that in reaching the verdict, the jurors heeded the judge's instructions." *Commonwealth* v. *Fidler,* 377 Mass. 192, 199 (1979). There was no error.

*Judgments affirmed.*

---

[14] There was other evidence of the defendant's intent to rape the victim. Angela Lyles, a woman who knew the defendant and his family, said that the defendant lived in an abandoned apartment in the building in which she lived. According to Lyles, on July 9, at approximately 11:30 P.M., as the defendant left his apartment building, he told Lyles that he intended to engage in sexual intercourse with "the girl that can't hear or talk [who] lives across the street." After telling Lyles this, the defendant walked across the street to the victim's apartment building.