COMMONWEALTH *vs.* ANTHONY D. MORESCHI.

No. 94-P-197.

Middlesex. December 13, 1994. - May 17, 1995.

Present: JACOBS, PORADA, & IRELAND, JJ.

*Rape. Evidence,* Fresh complaint. *Practice, Criminal,* Required finding, Sentence, Assistance of counsel.

At the trial of indictments charging aggravated rape and two counts of assault and battery by means of a dangerous weapon, testimony by a witness that the victim had stated in a series of conversations over two days that she had been assaulted and beaten and that on the third day the victim had stated that she was raped was properly admitted as evidence of one fresh complaint; in any event, the testimony was merely cumulative of the victim's testimony and other properly admitted fresh complaint evidence. [565-567]

At a rape trial, no substantial risk of a miscarriage of justice was created by correctly admitted fresh complaint testimony of a police officer, accompanied by appropriate limiting instructions. [567-568]

All details of a continuing episode of criminal conduct that included beatings, threats, and intimidation, culminating in the defendant's raping the victim were admissible in evidence as part of fresh complaint testimony, with appropriate limiting instructions under the principles set forth in *Commonwealth* v. *Blow*, 370 Mass. 401 (1976). [568-569]

Evidence at the trial of an indictment for aggravated rape was sufficient to warrant a verdict of guilty either on the theory that the rape resulted in or was committed with acts resulting in serious bodily injury or on the theory that the rape was committed during the commission of assault and battery by means of a dangerous weapon [569-571], and there was no error in the sentence imposed by the judge [571-572].

A defendant convicted of aggravated rape did not demonstrate that his trial counsel rendered him ineffective assistance in the conduct of his defense. [572]

INDICTMENTS found and returned in the Superior Court Department on June 9, 1992.

The cases were tried before *Katherine Liacos Izzo*, J.

*William P. Homans, Jr.*, for the defendant.

*Marguerite T. Grant,* Assistant District Attorney (*James H. O'Brien,* Assistant District Attorney, with her) for the Commonwealth.

IRELAND, J. The defendant was convicted by a Superior Court jury of one indictment charging aggravated rape, two indictments charging assault and battery by means of a dangerous weapon, and one indictment charging assault and battery.[1]

He appeals from the convictions on the grounds that the trial judge erred (1) in admitting in evidence fresh complaint testimony of two witnesses concerning accounts of the assaults, which, the defendant argues, were temporally separate from the rape; (2) in denying his motion for a required finding of not guilty on the aggravated rape charge, because, in the defendant's opinion, the rape was neither committed *with* acts resulting in serious bodily injury nor committed *during* the commission, or attempted commission, of any of the crimes enumerated in the aggravated rape statute, G. L. c. 265, § 22(*a*); and (3) in imposing a sentence of from twenty to twenty-five years on the aggravated rape conviction, where the maximum sentence for rape is only twenty years.[2] Finally, the defendant claims ineffective assistance of counsel, because his trial counsel failed to object to portions of the fresh complaint testimony. We affirm the convictions.

We briefly recount the Commonwealth's evidence concerning the incident from which the defendant's convictions arise. The victim and the defendant had known each other for several years and, in the months preceeding the rape and assaults, were romantically involved. She had become pregnant by him. They had lived together at the defendant's residence on 13 Crescent Street, Everett, from late November, 1991, through December, 1991, but the victim had moved to her own apartment in early January, 1992. At that time, their relationship had become quite strained, in large part over the pregnancy.

---

[1] The latter conviction was placed on file with the defendant's consent and hence is not before us.

[2] The defendant received sentences of from nine to ten years on each of the convictions of assault and battery by means of a dangerous weapon, the terms to be served concurrently with the aggravated rape sentence.

On Wednesday, February 12, 1992, the day of the incident, the two met at the defendant's request at about 5:00 P.M. at the New Brown Jug, a local pizza bar. During their ensuing conversation, the victim told the defendant she planned to keep the baby and was breaking off their relationship. In the victim's words, he became "nervous and distraught." She then brought up the subject of money the defendant owed her. He informed her she could pick up the money later at his place on 13 Crescent Street. When she went to that address around 7:00 P.M., she found the defendant there alone. He paid her the money and then told her she should go upstairs to his bedroom to retrieve a T-shirt she had left there.

The defendant followed her to the bedroom and then attacked her with a baseball bat. He beat her with the bat across her arms, thighs, hips, and back, then struck her several times in the abdomen with the thick end of the bat, yelling repeatedly, "You are not going to keep this baby!" He slapped her across her face, head, back, and legs with his open hand and then bit her on the shoulder and thigh through her clothes. He held the bat against her throat, telling her he intended to kill her.

When she went to the bathroom to wash blood from her face, he pushed her face and head into the toilet bowl and flushed the toilet "three or four times." He then kicked her several times in the abdomen with his sneakered foot while she lay helpless on the floor. Clutching the victim by her hair and arm, he returned her to the bedroom, where the earlier beatings had occurred. He sat and consumed most of a bottle of champagne, while she looked on in fear.

He then asked her to perform oral sex on him. She refused. He tore off her clothes and raped her on the bed. Afterwards, she fell asleep and, upon awakening the next morning, found the defendant asleep in a chair near the bed. When he awoke later, he would not let the victim leave.

When the defendant left the house in the early afternoon, the victim returned to her apartment. Six days later, she met with a detective, Regina Collyer, from the Everett police de-

partment and described the beatings and the rape. She explained she had not reported the rape earlier because she was ashamed.

1. *Fresh complaint testimony.* Following testimony of the victim, the Commonwealth called Kristen Clarke, a friend of the victim, and Detective Collyer as fresh complaint witnesses. Over defense objection, Clarke testified to a telephone conversation with the victim on the morning of February 13, when the victim called her from the defendant's residence and told her that the defendant had beaten her with a bat. The second telephone conversation between the two, to which Clarke testified, occurred the same day in the afternoon, after the victim had left the defendant's residence and returned home. During that conversation, the victim told Clarke that "she was sore and bruised up really bad" from the beatings. Clarke then testified about subsequent conversations she had with the victim on Friday, February 14, and Saturday, February 15; on Saturday, February 15, when the two went to lunch together, the victim eventually told her of the defendant's having suggested that she perform oral sex on him and of his then having raped her. According to Clarke, the victim had appeared "ashamed" and hesitant while talking about the sexual affronts. Defense counsel objected to portions of Clarke's testimony about the February 15 conversation. The defendant seizes upon the absence of reference to the rape during the victim's initial conversations with Clarke to argue that the portions of Clarke's testimony referring to those conversations were improperly admitted as fresh complaint evidence.

It has long been held here, as elsewhere, that, where a defendant is tried for a sexual crime such as aggravated rape, evidence of a "fresh complaint" of that crime made by the victim with reasonable promptness is admissible during the Commonwealth's case to corroborate the victim's testimony that a rape occurred. See *Commonwealth* vs. *Bailey*, 370 Mass. 388, 391-397 (1976) (discussing history of fresh complaint doctrine); *Commonwealth* v. *Lavalley*, 410 Mass. 641, 643-644 (1991); *Commonwealth* v. *Licata*, 412 Mass. 654,

656-660 (1992). Moreover, unlike most other jurisdictions, in Massachusetts a fresh complaint witness is not confined to testifying merely to the fact that a complaint was made, but may also testify as to all the attending details to which the victim has previously testified, but only for the limited purpose of corroborating the victim's version of events concerning the sexual charge. *Commonwealth* v. *Licata*, 412 Mass. at 658-659 & n.8. See also Liacos, Massachusetts Evidence § 6.18.2, at 339 (6th ed. 1994).

These principles of fresh complaint evidence hold true where, as here, a defendant has also been charged with non-sexual offenses that stem from the same episode and are tried with the alleged sexual offense. *Commonwealth* v. *Blow*, 370 Mass. 401, 404-406 (1976). See also *Commonwealth* v. *Barbosa*, 399 Mass. 841, 843, 848-849 (1987) (fresh complaint testimony admitted in defendant's trial for assault with intent to rape and for assault and battery). However, the fresh complaint evidence may be used only in relation to the sexual offense and solely for corroborative purposes, *id.* at 849, and the defendant is entitled to a jury instruction to that effect immediately following the fresh complaint testimony. *Ibid. Commonwealth* v. *Licata*, 412 Mass. at 660.

We do not regard as fatal to Clarke's testimony that actual mention of the rape did not occur during her initial conversations with the victim but came out only later in their conversation over lunch on Saturday. In addition to testifying specifically about certain conversations, Clarke indicated throughout her testimony that the two had been in constant communication from Thursday to Saturday and that all day Friday Clarke had called the victim nearly every hour to check on her. Seen in this light, the entire course of contacts between the two from Thursday to Saturday may be regarded as "a single event constituting a fresh complaint of rape." See *Commonwealth* v. *McGrath*, 364 Mass. 243, 248-250 (1973).

Even if it were error to admit those portions of Clarke's testimony concerning conversations in which the rape itself was not mentioned, the error was harmless and nonprejudi-

cial. The testimony was merely cumulative of particularly detailed and graphic testimony already given by the victim herself and of the properly admitted testimony of the other fresh complaint witness, Detective Collyer. See *Commonwealth* v. *Blow*, 370 Mass. at 404, 406; *Commonwealth* v. *Figueroa*, 413 Mass. 193, 198 (1992); *Commonwealth* v. *Mula*, 19 Mass. App. Ct. 993, 993-994 (1985) (harmless error in admitting as fresh complaint evidence hearsay accounts in hospital records that were "merely cumulative of other evidence which was properly admitted and limited"). Nor was Clarke's testimony used as hearsay to fill gaps in the Commonwealth's case. See *Commonwealth* v. *Scanlon*, 412 Mass. 664, 670 (1992).

Detective Collyer, the other fresh complaint witness, testified without objection as to the interview she conducted with the victim on February 19, 1991, at the Everett police station. In that interview, under questioning by Collyer, the victim described having been raped and "severely beaten." Collyer recounted the victim's statements to her about the beatings and also described marks she had seen on the victim's face, arms, legs, and back, see *Commonwealth* v. *Scanlon*, 412 Mass. at 671 (witness's observations of complainant's demeanor not fresh complaint testimony). This unobjected to testimony, which also included reference to details of "related crimes," *Commonwealth* v. *Blow*, 370 Mass. at 406, as "it would [have been] impossible as a practical matter to segregate the facts corroborating only the claim of rape," *id.* at 405, was properly admitted as evidence of fresh complaint of the rape. *Id.* at 406. *Commonwealth* v. *Barbosa*, 399 Mass. at 849. The testimony did not go beyond the scope of that given by the victim, compare *Commonwealth* v. *Bailey*, 370 Mass. at 393; contrast *Commonwealth* v. *Kirouac*, 405 Mass. 557, 565 (1989), and it was decidedly less detailed and less graphic as well. See *Commonwealth* v. *Bailey, supra*. It was followed by an immediate instruction to the jury on the nature and proper use of fresh complaint testimony, together with the admonition that jurors were to "consider the fresh complaint testimony as corroboration of

the alleged sexual crime exclusively" and that they "may not under any circumstances consider the statements in evaluating [the victim's] testimony concerning the [nonsexual charges]." There was no error in admitting Collyer's testimony.

The defendant urges nonetheless that, because the assault incidents occurred some time prior to the rape, the principle set out in *Commonwealth* v. *Blow, supra,* should not have been applied at trial to allow the two fresh complaint witnesses to testify in detail about the assaults. We regard the events of February 12, 1991, as one continuing incident or episode of criminal conduct that included beatings, threats, and intimidation culminating in the victim's being raped by the defendant. The events were tied together by an obvious unity of time, place, and circumstance. They took place within the defendant's bedroom and bathroom over a period of a few hours (or less), when the victim was under the defendant's total control. During that time, the victim never reached a point of relative safety and was not free to leave. It would be natural, given those circumstances, for the victim to mention the associated crimes in her statements about the rape itself. *Commonwealth* v. *Blow,* 370 Mass. at 405. The relative paucity of detail in the victim's statements about the rape — as opposed to the beatings — does not alter our analysis. "It is not difficult to understand a rape victim's reluctance to discuss with others, particularly strangers, the uncomfortably specific details of a sexual attack." *Commonwealth* v. *Licata,* 412 Mass. at 657. That seemed plainly the case with the victim here. Furthermore, "[by] allowing admissibility of all details, the [fresh complaint doctrine gives] the factfinder the maximum amount of information with which to assess the credibility of the . . . complaint evidence as well as the overall credibility of the victim." *Id.* at 659 (citation omitted). Any lack of detail about the rape could, arguably, have worked in the defendant's favor. We conclude that the principle enunciated in *Commonwealth* v. *Blow,* 370 Mass. at 404-406, of allowing fresh complaint tes-

timony of crimes closely related to the sexual crime should apply here.

The defendant argues that, when applied in these circumstances, the principle is too broad, as it allows the credibility of a complainant or victim to be unfairly bolstered by her accounts of the nonsexual, assault charges. The defendant was entitled to, and received, an immediate instruction that the jury were not to consider the fresh complaint testimony as corroborating the victim's testimony on that score. Jurors are generally presumed to heed properly articulated instructions. *Commonwealth* v. *Helfant*, 398 Mass. 214, 228 (1986). Moreover, the argument also ignores the fact that the rationale underlying the rule that permits the details attending a sexual offense to come in at trial through fresh complaint testimony for limited corroborative purposes, *Commonwealth* v. *Bailey*, 370 Mass. at 396, is to counteract the typical jury's "considerable and perhaps inordinate skepticism in rape cases." *Id.* at 394. Without mention of the pertinent attending details, a witness's fresh complaint testimony would likely work the opposite effect, as it would tend to diminish, not enhance, the victim's credibility. See *Commonwealth* v. *Blow*, 370 Mass. at 405.

2. *Motion for required finding of not guilty of aggravated rape.* At the close of the Commonwealth's case, the defendant moved for a required finding of not guilty on the aggravated rape charge, arguing generally that the Commonwealth had not "established . . . the necessary elements" of aggravated rape. On appeal, the defendant has refined his position to argue that the Commonwealth failed to show the aggravating circumstances required by the statute, G. L. c. 265, § 22(*a*), because both incidents of assault and battery with a dangerous weapon occurred some time prior to the rape and, thus, were completed acts.

The separate crime of aggravated rape, G. L. c. 265, § 22(*a*) (versus simple, or nonaggravated rape), was established by St. 1980, c. 459, § 6. It includes all the elements of simple rape, G. L. c. 265, § 22(*b*), as well as the element of aggravation, which may be satisfied by showing either that

the rape "results in or is committed *with* acts resulting in serious bodily injury" (emphasis supplied) or that the rape "is committed *during* the commission or attempted commission of [certain enumerated crimes]"[3] (emphasis supplied). G. L. c. 265, § 22(*a*), as appearing in St. 1980, c. 459, § 6.

At defense counsel's insistence (and over objection by the Commonwealth), the jury were asked only to return a general verdict on this charge, supportable on either theory of aggravation. As to the first (rape resulting in or committed with acts resulting in serious bodily injury), there can be no doubt that the victim suffered the requisite injuries from acts committed with the rape. There was ample evidence of serious bodily injury, from the testimony of a physician who had treated the victim on February 25, 1992, by aborting her fetus. The physican's personal observations and clinic notes of infected bite marks, of bruising that posed risks of blood poisoning or of blood clots to the victim's lungs, and of likely damage to the victim's uterus and fetus provided a  basis from which the jury could have found aggravation on this theory. See *Commonwealth* v. *Tavares*, 27 Mass. App. Ct. 637, 638 (1989) (affirming conviction of aggravated rape where victim suffered injuries not significantly more serious than these).

As to the second theory (rape committed during commission or attempted commission of certain crimes), there was also ample evidence to support the verdict. The jury returned separate guilty verdicts on both counts of assault and battery by means of a dangerous weapon, one of the crimes named in the aggravated rape statute. Given our ruling that these beatings, together with the rape, constituted one continuous episode and course of conduct, the jury could also have found that the rape occurred "during" the commission of these

---

[3]Those crimes are assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A; assault by means of a dangerous weapon, G. L. c. 265, § 15B; armed robbery, G. L. c. 265, § 17; unarmed robbery, G. L. c. 265, § 19; kidnapping, G. L. c. 265, § 26; armed or unarmed burglary, G. L. c. 266, §§ 14, 15; various forms of breaking and entering, G. L. c. 266, §§ 16, 17, & 18; and unlawfully carrying a dangerous weapon, G. L. c. 269, § 10.

crimes, as contemplated by the statute. Our cases do not require that the underlying crime must occur at the precise moment of vaginal penetration. See, e.g., *Commonwealth* v. *Robinson*, 24 Mass. App. Ct. 680, 687-688 (1987), where the defendant was convicted on a general verdict of aggravated rape and on separate verdicts of assault and battery with a dangerous weapon, armed robbery, and breaking and entering with intent to commit a felony, and where this court observed that any one of the underlying felonies would make the rape an aggravated one; there, the act of breaking and entering was completed *prior* to actual rape of the victim in her bedroom, *id.* at 681, and the armed robbery occurred *between* two separate acts of rape, *ibid.* Compare *Commonwealth* v. *Kickery*, 31 Mass. App. Ct. 720 (1991), reversing the defendant's conviction on a general verdict of aggravated rape based alternatively on kidnapping and joint enterprise, where the victim had "willingly accompanied the defendant . . . to where the rape eventually occurred," *id.* at 723, and the act of kidnapping "took place *after* the rape . . . and was separate and distinct from the rape" (emphasis original), *id.* at 724. Had "nonconsensual 'confinement or asportation . . . [of the victim been] used as a means to facilitate the [commission of the rape,]' " *id.* at 723 (citation omitted), we have little doubt that the aggravated rape conviction in that case would have been affirmed as having occurred "during" the commission of the kidnapping. Here, by contrast, through a course of repeated and prolonged beatings, first with a baseball bat and then with the defendant's shod foot, the victim was subjugated and her will to resist overborn, at which point she was raped. The defendant was properly convicted under the statute.

3. *Sentencing.* Because the defendant was properly convicted, there was no error in sentencing him to the term of from twenty to twenty-five years in a State prison for aggravated rape. The statute expressly allows for "imprisonment . . . for life or for any term of years" for aggravated rape. G. L. c. 265, § 22(*a*), as appearing in St. 1980, c. 459, § 6. Consecutive sentences were not imposed. Hence, there is

no problem under the "same evidence" rule with multiple punishments. Compare *Commonwealth* v. *Williams*, 23 Mass. App. Ct. 716, 718 (1987).

4. *Ineffective assistance of counsel.* The defendant argues that his trial counsel failed properly to object to fresh complaint testimony regarding certain conversations that the victim had with Kristen Clarke in which the victim mentioned only the beatings, but not the rape. The Commonwealth counters that defense counsel's objections to the first of the conversations on February 13 may be regarded as "running to" the subsequent ones. The distinction is immaterial. Even if the testimony was admitted in error (although we do not so hold) over proper and timely objection, as the Commonwealth would have it, the error was harmless. If the testimony is considered to be unobjected to, there has not been shown either a "substantial likelihood of a miscarriage of justice," *Commonwealth* v. *Hamilton*, 411 Mass. 313, 323 (1991), or that the defendant was deprived of an otherwise available substantial ground of defense by his trial counsel's failure. *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

*Judgments affirmed.*