COMMONWEALTH vs. FRANCIS McCOURT.

No. 99-P-1811.

Hampden. June 7, 2001. - May 10, 2002.

Present: GREENBERG, COWIN, & McHUGH, JJ.

Further appellate review granted, 437 Mass. 1107 (2002).

*Rape. Statute,* Construction.

This court concluded, based on the language of G. L. c. 265, § 22(*a*), that a
conviction of aggravated rape requires proof that the aggravating
circumstances played some causal, or at least facilitating, role in effecting
the rape itself: therefore, where a criminal defendant was convicted of ag-
gravated rape in the absence of such proof, this court remanded the case to
the Superior Court for resentencing on the lesser included offense of rape.
[677-682]

INDICTMENTS found and returned in the Superior Court Depart-
ment on February 26, 1997.

The cases were tried before *Bertha D. Josephson,* J.

*Murray A. Kohn,* Committee for Public Counsel Services, for
the defendant.

*Bethany C. Lowe,* Assistant District Attorney, for the
Commonwealth.

McHUGH, J. At trial, the Commonwealth's evidence persuaded
the jury that the defendant raped and beat the victim in the
predawn hours of a cold winter morning. From his resulting
convictions of aggravated rape, attempted murder, assault and
battery by means of a dangerous weapon, and indecent assault
and battery, the defendant appeals. He claims, principally, that
his motion for a required finding of not guilty on the charge of
aggravated rape should have been allowed because all of the
aggravating acts occurred after he had had sexual intercourse
with the victim.[1] Constrained to agree, we vacate his conviction

---

[1]The defendant's appellate counsel, pursuant to *Commonwealth* v. *Moffett,*
383 Mass. 201, 207-209 (1981), also asserts that the defendant was denied ef-
fective assistance of counsel in three particulars. After careful consideration of
the argument and the record, we are wholly unpersuaded that trial counsel's

on that charge and remand the case for resentencing on the lesser included offense of rape.

Distilled from the testimony, the exhibits, and the inferences they produced, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), the Commonwealth's case was this. About midnight on January 31, 1997, the victim, after dining with a friend, drove to a nearby American Legion post to break up with Stephen, the post's bartender, whom she had been dating for the preceding month. As she arrived, snow began to fall.

The victim entered the post, sat at the bar, and told Stephen she wanted to end their relationship but remain friends. Stephen was amenable and agreeable conversation ensued. While the two were conversing, the defendant, whom Stephen knew but whom the victim had never met, sat down on a nearby stool. The conversation quickly became triangular. After a few minutes of talk, the defendant and the victim briefly played a game of some sort that involved trying to find an owl on a five dollar bill. Then, about twenty minutes after he sat down, the defendant said his good-byes, got up, and left the post.

The victim remained in the post for another twenty minutes, talking with Stephen as he was closing up. She and Stephen then left. By that time it was snowing hard and substantial snow had accumulated. Stephen and the victim parted company in the post's parking lot and the victim got in her car to drive home. She soon became confused and took a wrong turn. Believing that she could remedy her mistake by continuing on until she found a familiar cross street, she instead found herself at the end of a cul-de-sac. After pulling into a driveway to turn around, she got stuck and, leaving her car in reverse, got out to try to push herself out. It was now 2:30 A.M. and snowing heavily.

performance in any of those particulars fell "measurably below that which might be expected from an ordinary fallible lawyer." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). The defendant personally authored and filed his own brief and reply brief. Those briefs contain a tightly woven series of arguments about consequences flowing from what the defendant claims was a defect in the wording of the aggravated rape indictment and a description of alleged deficiencies in his trial counsel's performance that mirrors the claim on the same subject his appellate attorney proffered. The indictment's wording, however, was perfectly appropriate, and the defendant's expansive discourse on the asserted deficiencies of his trial counsel is no more persuasive, and far less succinct, than his appellate attorney's offering on the same subject.

As the victim pushed on her car, the defendant materialized out of the snowy darkness. Recognizing him, the victim asked if he lived nearby. He replied affirmatively[2] and offered to help. She accepted his offer, and he began to push on the car although, in her view, without a great deal of energy. Thinking that their efforts might be more fruitful if she put the car in a forward gear, the victim opened the driver's side door to reach the gear-shift lever. As she did, the defendant grabbed her arm and told her to unlock the car's back door.

Frightened, the victim unlocked the rear door. The defendant opened the door while holding her arm and pushed her into the car's back seat. After a brief but unpleasant struggle, the details of which need not be recounted here, he raped her vaginally. In so doing, the defendant used no greater force than was necessary to complete the crime.

After he had finished, the defendant and the victim got out of the car. The defendant then began to insult the victim. As the insults ended, he said to her, "You don't expect me to let you leave now, do you, not after I just raped you? You have all the evidence on me. . . . I can't let you go." At that point, he put his hands together in a fist and hit her on the back of her head, knocking her to the ground. From the ground, the victim asked why he had hit her. In reply, the defendant growled, charged at her, and grabbed her windpipe, cutting off her air. While holding the victim's throat, the defendant told the victim, "Since I just got out of jail, I can't expect you to live. I'm not going back, so I'm not going to let you live."

The victim struggled with the defendant. Ultimately, she managed to get his hands off of her throat, but he quickly regained his grip and squeezed again. Again, she struggled free but this time got to her feet and began to walk away. As she did, she asked the defendant to let her go so she could see her daughter in Springfield "one more time." That request enraged the defendant, who accused her of lying when she had made some earlier statement, perhaps in the bar, to the effect that she

---

[2]His reply was untrue. By his own testimony, he had waited outside the post until the victim emerged and then followed her until she got stuck. See note 4, *infra.*

lived in Chicopee. He grabbed her by the hair, threw her to the ground, and kicked her in the face three or four times.

As the victim got to her knees, the defendant picked up her cigarettes, lit one for himself, and asked her if she wanted one. She said "yes," and he tossed her the pack. As she got a cigarette into her mouth, the defendant again kicked her in the face. In reply to her question, "What the hell did you do that for?," the defendant said, "You don't deserve anything," tossed her to the ground, and began punching her in the back.

Eventually, the victim was able to calm the defendant down to the point where he began crying, telling her she was a nice person and that he should not have done what he had done. He helped her free the car and she drove home. Upon arrival, she told her mother what had happened and went immediately to the emergency room of the local hospital.[3] Shortly thereafter, the defendant was apprehended and charged with the crimes of which he ultimately was convicted.[4]

When the Commonwealth finished presenting its case-in-

---

[3]The nurse who treated the victim in the emergency room observed that the victim's lips were swollen, that her face was slightly swollen, and that she had an abrasion or laceration of her lower lip, a two-inch laceration of her chin that required several stitches, dried blood on the side of her face, bruising about the upper part of her throat and neck, swelling of her left wrist, a broken fingernail on her left hand, a four-inch abrasion in a straight line on the right side of her neck, bruising about her upper front chest and neck, bruising across the top of her back by her shoulders, and abrasions on her leg and the back of her calf. Her clothing was wet and stained with blood. The physician who treated the victim in the emergency room made the additional observations that she had several areas of mild swelling in straight lines on her neck consistent with where her necklace had been, swelling and redness of her external genitalia, mild swelling of her anus, and dried blots or flecks of blood on her inner thighs. The physician attributed that blood to a small tear in the vaginal wall although she was unable to detect the tear itself. It is uncontested that the beating the defendant inflicted on the victim after getting out of the car accounted for the vast bulk of those injuries. See note 7, *infra*.

[4]After his arrest, the defendant said that he had met the victim by prearrangement after she left the post and that they had had consensual sexual intercourse in the rear seat of her car. Thereafter, she injured herself when she fell as the two of them tried to push her car out of the snow. At trial, the defendant's account was different. He testified that they had met by prearrangement and had had consensual intercourse in the car's back seat (as stated in his previous account). When they finished, the victim made an insulting remark to the effect that the defendant had failed to satisfy her sexually. That made him angry, so he punched her in the face. A fight ensued, but the

chief, and again when all of the evidence had been presented, the defendant moved for a required finding of not guilty, asserting that the facts just recited could not support a conviction of aggravated rape because all of the aggravating circumstances occurred after the rape itself had concluded. The trial judge denied the motion, stating that the rape and its sequelae were part of a continuous chain of events.[5] She later delivered to the jury a charge permitting them to return a verdict of aggravated rape if they were persuaded that the aggravating circumstances occurred during "one continuous episode and course of conduct." Both the ruling on the motion and the subsequent charge were error.

Under G. L. c. 265, § 22(a), proof of aggravated rape requires proof of all of the elements of rape plus proof that "sexual intercourse . . . results in or is committed with acts resulting in serious bodily injury . . . or is committed during the commission or attempted commission of" assault and battery by means of a dangerous weapon or certain other specified crimes.[6] The

---

defendant denied that he had kicked or threatened to kill her at any point during the combat.

[5] In response to counsel's question after her ruling, she expressly noted that the defendant's appellate rights regarding denial of the motions were preserved.

[6] In full, G. L. c. 265, § 22(a), as appearing in St. 1980, c. 459, § 6, the statute prohibiting aggravated rape, reads as follows:

"Whoever has sexual intercourse or unnatural sexual intercourse with a person, and compels such person to submit by force and against his will, or compels such person to submit by threat of bodily injury and if either such sexual intercourse or unnatural sexual intercourse results in or is committed with acts resulting in serious bodily injury, or is committed by a joint enterprise, or is committed during the commission or attempted commission of an offense defined in section fifteen A [assault and battery by means of a dangerous weapon], fifteen B [assault by means of a dangerous weapon], seventeen [armed robbery], nineteen [unarmed robbery] or twenty-six [kidnapping] of this chapter, section fourteen [armed burglary], fifteen [unarmed burglary], sixteen [breaking and entering in the night time with intent to commit a felony], seventeen [breaking and entering in the daytime or entering without breaking in the night time] or eighteen [entering dwelling house in the night time] of chapter two hundred and sixty-six or section ten [firearms and dangerous weapon] of chapter two hundred and sixty-nine shall be

phrases "committed with" and "committed during" are somewhat elastic.[7] The Commonwealth urges, as it did below, that the elasticity is sufficient to permit a finding of aggravated rape whenever the aggravating circumstances occur as part of a continuing course of conduct that includes nonconsensual sexual intercourse, whether or not there is any causal or other facilitating relationship between the aggravating acts and the intercourse.

We faced a similar issue in *Commonwealth* v. *Kickery*, 31 Mass. App. Ct. 720 (1991). There, the defendant and a companion raped the victim. They then tied her to a tree in the woods and left. *Id.* at 722. The defendant was convicted of kidnapping for tying the victim to the tree, and the kidnapping was one of two possible bases presented to the jury to support a conviction of aggravated rape. *Id.* at 724. On appeal, the Commonwealth argued in its brief that "[t]ying [the victim] up and leaving her in the woods was the Defendant's . . . final act in accomplishing [the] crime[]. Therefore, that action of confining the victim, i.e., kidnapping, can also be considered as occurring during the commission of the rape." We nevertheless reversed the aggravated component of the rape conviction, saying as follows:

> "The conduct of the defendant in tying the victim to the tree, and leaving her that way, constituted kidnapping. The kidnapping took place *after* the rape [emphasis original], however, and was separate and distinct from the rape. Because the rape did not take place during the commission of the kidnapping as required by G. L. c. 265, § 22(*a*), it was not aggravated by that crime."

punished by imprisonment in the state prison for life or for any term of years."

[7]The Commonwealth does not contend that the sexual intercourse itself "result[ed] in . . . serious bodily injury," which the judge defined without objection in a manner consistent with the definition set out in G. L. c. 90, § 24L(3); G. L. c. 90B, § 8A(3); and G. L. c. 265, § 40. Instead, the Commonwealth claims that sexual intercourse was part of a continuous episode that produced serious bodily injuries and thus was "committed with acts resulting in serious bodily injury" as the quoted phrase is used in G. L. c. 265, § 22(*a*).

*Id.* at 724.[8]

Later, in *Commonwealth* v. *Moreschi*, 38 Mass. App. Ct. 562 (1995), we faced a situation in which the defendant assaulted and beat the victim over an extended period during which he also raped her. He was convicted of aggravated rape on a theory both that the rape was "committed with" acts resulting in serious bodily injury and that the rape was "committed during" the commission of other crimes the statute specifies. *Id.* at 569-570. In affirming the conviction, we stated that the "beatings, together with the rape, constituted one continuous episode and course of conduct." *Id.* at 570. We also observed that "[o]ur cases do not require that the underlying crime must occur at the precise moment of vaginal penetration." *Id.* at 571. We concluded our discussion, however, by stating that "through a course of repeated and prolonged beatings, first with a baseball bat and then with the defendant's shod foot, the victim was subjugated and her will to resist overborn, at which point she was raped." *Ibid.* See *Commonwealth* v. *Dranka*, 46 Mass. App. Ct. 38, 43-44 (1998) (instruction on aggravated rape properly given where defendant pointed a pistol at the victim and then raped her naturally and unnaturally). See also *Commonwealth* v. *Robinson*, 24 Mass. App. Ct. 680, 682-683, 687-688 (1987) (indictment charged rape occurred "during the commission of" specified offenses; assault and battery with a dangerous weapon, armed robbery, and breaking and entering all occurred before at least one act of rape).

None of the cited cases and no other case we have heretofore decided holds that rape becomes aggravated rape whenever an aggravating act occurs as part of a continuous course of conduct that includes the rape itself. Indeed, to apply G. L. c. 265, § 22(*a*), in a manner that turns on whether the aggravating acts were "separate" or were instead an element of a continuing episode is to invite arbitrary and imprecise results. What begins and ends a series of acts and what acts are connected to what other acts depends not so much on the acts themselves as it does on someone's necessarily subjective assessment of the entire sequence after it ends.

---

[8]Joint enterprise, the other foundation for the jury's verdict, was supported by the evidence. The verdict, however, was general and one deficient basis for it thus required reversal. *Ibid.*

More importantly, the cited cases and others dealing with the same subject can be harmonized when one recognizes that, in each case where a conviction of aggravated rape was affirmed, the aggravating circumstances played some causal, or at least facilitating, role in effecting the rape itself.[9] In our opinion, the intent the Legislature manifested when enacting G. L. c. 265, § 22(*a*), requires that the aggravating acts play such a facilitating role. In exploring that intent, we look to the language of the entire section, including language that is not directly applicable here, *Commonwealth* v. *Dunigan*, 384 Mass. 1, 5 (1981), and interpret all parts of the section in a manner that yields an integrated and harmonious whole. *Neff* v. *Commissioner of the Dept. of Industrial Accs.*, 421 Mass. 70, 73 (1995).

As noted above, unlawful sexual intercourse is aggravated if it "results in or is committed with acts resulting in serious bodily injury," if it "is committed by a joint enterprise," or if it is "committed during the commission or attempted commission" of eleven specified crimes. See G. L. c. 265, § 22(*a*). The words "results in" and "committed by" clearly and unequivocally require a causal connection. Nothing less will suffice.

The phrase "committed during" is more flexible but, in context, it, too, requires a facilitating nexus between the aggravating crime and the rape. Six of the eleven specified crimes involve assaultive behavior, at least broadly viewed, but the other five involve different forms of unlawful entries into a dwelling. Although one could logically view the former as aggravating a rape whether or not they facilitated the intercourse, the same cannot be said of the latter. Indeed, it is difficult to think of a rational basis for enhanced punishment of a rape because the perpetrator unlawfully entered some dwelling *after* the rape was completed.

---

[9]Indeed, the robbery cases on which the Commonwealth relies by analogy — concluding that the essential element of force could be applied after property was taken from the victim's person — all in fact involve situations in which force was used to assist the defendant to carry away the stolen property. See *Commonwealth* v. *Jones*, 362 Mass. 83, 89-90 (1972); *Commonwealth* v. *Sheppard*, 404 Mass. 774, 778 (1989); *Commonwealth* v. *Assad*, 19 Mass. App. Ct. 1007, 1008-1009 (1985); *Commonwealth* v. *Rajotte*, 23 Mass. App. Ct. 93, 94-95 (1986); *Commonwealth* v. *Lashway*, 36 Mass. App. Ct. 677, 680-681 (1994). All those cases thus involve some causal relationship between the force and the completed crime.

That leaves the phrase "committed with." Abstractly viewed, that phrase could mean, among other things, "committed in the company of" or it could mean "committed through use of." When faced with choices among possible meanings, "[w]e . . . construe each clause or phrase with reference to every other clause or phrase so that 'all parts [are] construed as consistent with each other so as to form a harmonious enactment.' " *First Natl. Bank of Boston* v. *Bernier*, 50 Mass. App. Ct. 756, 759 (2001), quoting from *Selectmen of Topsfield* v. *State Racing Commn.*, 324 Mass. 309, 312-313 (1949). The latter meaning achieves that objective and thereby produces an integrated and internally consistent approach to the aggravating acts and events the section describes. Particularly in light of the general principle that criminal statutes are to be strictly construed and any reasonable doubt as to a statute's meaning must be resolved in a defendant's favor, *Commonwealth* v. *Kerr*, 409 Mass. 284, 286 (1991); *Commonwealth* v. *Smith*, 431 Mass. 417, 425 n.10 (2000), this is the construction we think accurately reflects the Legislature's intention.

To be sure, sound social goals might well be served by enacting a statute without a causal requirement. As this case clearly shows, rape is predominately a crime involving not simply sex but "violence and domination 'calculated to humiliate, injure and degrade.' " See *People* v. *McKenna*, 196 Colo. 367, 372 (1978), quoting from Gager & Schurr, Sexual Assault: Confronting Rape in America 145 (1976). See also *United States* v. *Williams*, 89 F.3d 165, 168 (4th Cir. 1996). Punishing more severely the kind of degradation the defendant sought to inflict here, regardless of its facilitating role in his rape of the victim, would therefore recognize the acts surrounding the rape for precisely what they were. We look, however, at what the Legislature has done, not at what, in its wisdom, it might do. What it has done requires a causal or facilitating connection between the rape and the aggravating acts and events.

In light of the foregoing, the judgment on the indictment charging aggravated rape is vacated, and because there was ample evidence to support a conviction of rape and the jury necessarily concluded that the defendant had raped the victim, the case is remanded to the Superior Court for resentencing on

the lesser included offense of rape. See *Commonwealth* v. *Kickery*, 31 Mass. App. Ct. at 725. The other judgments are affirmed.

*So ordered.*