COMMONWEALTH *vs*. CARLTON J. BLOW.

Worcester.    December 2, 1975. — June 7, 1976.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, & WILKINS, JJ.

*Rape. Robbery. Evidence,* Fresh complaint, Corroborative evidence.
*Practice, Criminal,* Charge to jury; Directed verdict; Exceptions:
failure to save exception.   *Joint Enterprise.*

At the trial of indictments charging rape and unarmed robbery, testi-
mony by a witness that the complainant told him she had been raped
and robbed was admissible as evidence of a fresh complaint, and it
was not required that the testimony be limited to details concern-
ing the rape. [403-405]
Where a defendant is charged with multiple crimes and a fresh com-
plaint concerning a sexual offense including details of other crimes
is admitted in evidence, the defendant, at his request, is entitled to
an instruction that the complaint should be considered only in re-
lation to the sexual offense. [405-406]
Evidence that the defendant and another accompanied an intoxicated
woman in a taxi which the defendant directed to stop at a secluded
car lot, that with his companion the defendant guided the woman to
the back of the lot, that the defendant voiced no surprise or opposi-
tion as his companion ripped the pocketbook from the woman's arm
and that later, after accepting a share of the money, the defendant
fled with his companion was sufficient to justify the judge's refusal
to direct a verdict on a charge of unarmed robbery. [406-408]

INDICTMENT found and returned in the Superior Court on
November 9, 1972.

The case was tried before *Tisdale,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Robert A. Stolzberg* for the defendant.

*John M. O'Connor,* Assistant District Attorney, for the
Commonwealth.

KAPLAN, J.   Tried upon indictments for rape (G. L.
c. 265, § 22) and unarmed robbery (G. L. c. 265, § 19), the

defendant Carlton Blow was acquitted by a Worcester County jury of rape, and convicted of the robbery. His appeal under G. L. c. 278, §§ 33A-33G, is here on direct review pursuant to G. L. c. 211A, § 10 (A).

The jury may be taken to have adopted a view of the facts roughly as follows. Around midnight of October 8, 1972, the complainant, who had been drinking very heavily, went to Mr. Ed's Cafe to buy two six-packs of beer and to have some beer at the bar. The defendant and his companion, Vincent Wolochowicz,[1] were seated at a booth and had a clear view of her pocketbook as she paid. After roaming about the bar talking with several of the customers, the complainant settled into the booth with the pair. They were all "laughing and kidding." At one point in the evening the complainant tried to entice Wolochowicz into the ladies' room. At closing, the three left the bar together in a cab and during the ride there was a dispute as to whether Wolochowicz's recollection of a prior sexual encounter with the complainant was correct. (The complainant's own testimony was that she arrived at Mr. Ed's shortly before closing time to buy beer and that as she departed the two men rushed up behind her and jumped into the cab with her.)

On the defendant's order the cab stopped at a used car lot. Despite the complainant's protestations that she wanted to go home, the men pulled her out of the cab, mentioning something about getting a bottle and going to the "El Morocco." As the cab left, the two guided the complainant to the back of the lot. Wolochowicz said, "Give me your pocket." He twisted the complainant's arm and wrenched her purse from her, tearing the strap. The defendant observed Wolochowicz take the pocketbook. He pushed the complainant into the back seat of a junk car and engaged in intercourse with her. In the meantime Wolochowicz went through the pocketbook, removing $280. He yelled to the defendant, "Hey, we've got two hundred." Wolochowicz

---

[1] Wolochowicz had pleaded guilty to the robbery and been sentenced to five years and one day at Massachusetts Correctional Institution at Concord. He was called as a witness by the defense.

threatened to kill the complainant if she turned them in. He gave her $3 and a dime, saying, "Call a cab." Then Wolochowicz divided the money he had taken from the pocketbook, giving the defendant $100. The men fled from the scene together.

The complainant went to a nearby phone booth and telephoned the cab company, reaching the dispatcher who, as it happened, had shared the front seat in the cab with the driver on the trip to the car lot. She said she had had "problems" with the two men, but she did not mention the specifics. A cab arrived and took the complainant to the cab office where she told the dispatcher that she had been raped and robbed. She was taken to the police station, where she made a statement, and was then driven to a hospital for examination. That day she selected pictures of Wolochowicz and the defendant from a set, and later she pointed out the defendant at a lineup.

The defendant challenges his conviction for the unarmed robbery claiming that there was error in admitting the details of the complainant's statement to the dispatcher; in the instructions to the jury on intent and joint venture; and in denying the defendant's motions for a directed verdict at the close of the prosecution's case and before submitting the case to the jury. There was no error. We affirm the judgment.

1. The dispatcher, called by the Commonwealth after the complainant herself had testified, described the complainant's statements in the office of the cab company shortly after the events in the used car lot. His direct testimony was that "[s]he had said that she had been raped and robbed of three hundred dollars" and that she had said the defendant and Wolochowicz "had taken her out into a car in this parking lot and taken her pocketbook away from her, [and] took the money out. And she had said that the small guy [the defendant] had taken her clothes off and raped her." Defense counsel objected to the questions eliciting this testimony but the judge admitted it under the "fresh complaint" doctrine. See *Commonwealth* v. *Bailey, ante,* 388,

392 (1976), decided this day. The defense then moved to strike the testimony so far as it related to the robbery, but the judge ruled that the entire statement was admissible.

The defendant does not now attack head-on our rule which admits the details of the fresh complaint as part of the prosecution's case in chief to corroborate the complainant's court testimony (see *Commonwealth* v. *Bailey, supra* at 392-396); the argument is rather that our rule should not hold, or should be qualified, in the particular case where a defendant is charged with a second crime in addition to rape and the complaint extends to both crimes.[2] It is pointed out that such a complaint would have been inadmissible for the purpose in a trial charging the defendant with the second crime alone, and admission of the testimony here may be seen as especially improper because the defendant, as it turned out, was acquitted of the charge of rape.

As in *Commonwealth* v. *Bailey*, we think it clear that if there was any error in admitting the testimony, it was technical, not material error, and hardly ground for reversal. The dispatcher's statements "were merely a summary of her [the complainant's] oral testimony at trial. They were plainly cumulative in effect, and therefore they were not prejudicial." *Commonwealth* v. *Izzo*, 359 Mass. 39, 43 (1971); see *Commonwealth* v. *Howard*, 355 Mass. 526, 530 (1969). Nor were the statements so graphic or colorful as to be likely to have important effect on the jury. There was, moreover, a proper instruction that the statements could be considered only for corroborative purposes.

We note, further, that the jury reached a conclusion contrary to that suggested by the testimony of fresh complaint. Ordinarily such testimony would seem to aid the prosecution most in cases, like the one before us, in which the defendant hopes to establish consent (see *Common-*

---

[2] The defendant also argues that the jury instruction on fresh complaint was erroneous because it allegedly did not inform the jury that they could consider the complaint only as to the rape and not with regard to the robbery. But the defendant did not take exception to the charge in this respect. See *Commonwealth* v. *Smith*, 342 Mass. 180, 188 (1961); *Commonwealth* v. *Shea*, 323 Mass. 406, 416 (1948).

*wealth* v. *Bailey, supra* at 394); here the defendant was acquitted of the rape charge. On cross-examination, indeed, the defendant's attorney was able to elicit from the dispatcher that the complainant said Wolochowicz had robbed her and the defendant had raped her. Thus the testimony as a whole might have suggested, favorably to the defendant, that he was acting independently of Wolochowicz and was not a participant in the robbery.

Even if the testimony objected to could have had some impact, we would not be disposed to hold it, or any part of it, inadmissible and thus to abandon or modify our basic rule in the particular situation.[3] The defendant's proposed solution — that the narrative of the complaint be limited to details concerning the rape — has little to commend it. Often it would be impossible as a practical matter to segregate the facts corroborating only the claim of rape. And if it would be natural for the complainant to mention an associated crime in her statement of the sexual assault, the jury might draw an erroneous inference from the confinement of the testimony of fresh complaint to the alleged rape: admission of a partial statement might tend to discredit the complainant's testimony at trial as a recent fabrication rather than to corroborate it.

Among the alternatives that suggest themselves are limiting the testimony to the fact that a complaint of sexual assault was made, excluding the details, or having the prosecution forgo the testimony regarding complaint where multiple crimes are being tried. The first alternative would suffer from the faults of restricted corroboration already mentioned, and both alternatives would yield the anomaly that the evidence that could be called in support of a prosecution for rape would be diminished when the circumstances were allegedly aggravated. Still another alternative, severing the trial for rape from that for the other crimes, could relieve these problems but with other unacceptable consequences.

---

[3] But see our remarks below about limiting instructions concerning the testimony.

We think the advantage lies with maintaining a uniform rule that applies as well in instances of multiple charges (which must represent a sizeable fraction of all cases in which rape is charged). We believe there is no substantial likelihood of prejudice arising from such references as there may be to related crimes. Usually that testimony will be merely repetitive of the complainant's trial testimony (see *Commonwealth* v. *Izzo*, 359 Mass. 39, 43 [1971]); any discrepancy found may work in the defendant's favor. See *Commonwealth* v. *Bailey, supra* at 393; *State* v. *Kinney*, 44 Conn. 153, 156 (1876). To ensure more complete protection of the defendant, however, we think we should in the future (see note 2 *supra*) follow a practice adopted in Connecticut, a jurisdiction which, like the Commonwealth, admits the entire fresh complaint as part of the prosecution's case-in-chief: the defendant, if he desires, will be entitled to an instruction that the complaint shall be considered only in relation to the rape charge (and only for purposes of corroboration). See *State* v. *Purvis*, 157 Conn. 198, 207-208 (1968); *State* v. *Sebastian*, 81 Conn. 1, 4 (1908). As in the *Bailey* case, we add that if an extraordinary situation should arise in which the jury might be inflamed by testimony rehearsing the complaint, the trial judge would be free to take cautionary measures.

2. The defendant argues that the jury instructions were defective in failing to indicate that the intent to rob the victim must exist at the very time of the robbery, and in failing to distinguish between mere presence at the commission of a crime and active joinder therein. He also asserts that the judge erred in denying his motions for a directed verdict on the robbery charge. Although the points are argued separately, they all flow from the defendant's theory that although he was an actor in a sexual adventure with the complainant, he was not involved, except after the fact, in the theft of her pocketbook by Wolochowicz.

The jury instructions were adequate. The defendant requested instructions that to convict the jury must "find that the Defendant intended to rob the alleged victim at the time of the alleged robbery." The charge given was even

clearer in requiring that the mental state must actuate the prohibited physical conduct. See *Commonwealth* v. *Mahoney,* 331 Mass. 510, 513 (1954); W.R. LaFave & A.W. Scott, Jr., Criminal Law § 34, at 238 (1972). When the jury submitted a question as to the meaning of the word "intent," the judge stated: "If there is any doubt as to what the word 'intent' means, it is the purpose or objective of the defendant at the time the crime was committed . . . ."

A definition of joint venture was called for, as it was not the defendant but Wolochowicz who wrenched the pocketbook from the complainant and stole the money. The defendant made no objection to the relevant instructions and so is foreclosed on appeal. See *Commonwealth* v. *Smith,* 342 Mass. 180, 188 (1961); cf. *Commonwealth* v. *Hall,* 369 Mass. 715, 717 (1976). But the instructions were sound, emphasizing the requirements of active participation in a common design, and leaving the elements as factual questions for the jury. See generally *Commonwealth* v. *Richards,* 363 Mass. 299, 305-308 (1973); *LeBlanc* v. *Commonwealth,* 363 Mass. 171, 175-178 (1973); *Commonwealth* v. *Benders,* 361 Mass. 704, 705-709 (1972).

With respect to the defendant's request for a directed verdict at the close of the prosecution's case,[4] there was enough evidence on each of the elements, under the usual standard, to warrant the denial. See *Commonwealth* v. *Sandler,* 368 Mass. 729, 740 (1975); *Commonwealth* v. *Coleman,* 366 Mass. 705, 709-710 (1975); *Commonwealth* v. *Baron,* 356 Mass. 362, 365 (1969). The jury could find that Wolochowicz and the defendant, while still at the bar, formed a plan to rob the complainant, or had, at least, an understanding to take advantage of an intoxicated woman that encompassed a probability of robbery. Cf. *Common-*

---

[4] The defendant moved for a directed verdict at the close of the Commonwealth's case and again at the close of all the evidence. Under *Commonwealth* v. *Kelley, ante,* 147, 149-150 & n.1 (1976), the former motion is not waived by the defendant's going on to introduce evidence on his own behalf, and the defendant would be entitled to a reversal of the judgment if that motion was improperly denied on the basis of the condition of the case when the motion was made, without regard to any evidence coming in later.

*wealth* v. *Richards, supra* at 308. And the evidence allowed the inference that the defendant acted in furtherance of the venture: he directed the cab to a secluded car lot and he may himself have assisted in pulling the complainant from the cab despite her protests. With Wolochowicz he guided her to the back of the lot. He did not voice opposition or surprise as Wolochowicz ripped the pocketbook from the complainant's arm. See *State* v. *Parker*, 282 Minn. 343, 355-356 (1969). Wolochowicz said, "Hey, we've got two hundred," referring to the money he removed, and the defendant promptly took a share of the proceeds and fled in company with Wolochowicz. See *People* v. *Thomas*, 104 Ill. App. 2d 56, 65-66 (1968); *Murray* v. *Commonwealth*, 210 Va. 282, 283 (1969). The prosecution's evidence was sufficient to justify the judge's refusal to direct a verdict.

The defendant renewed his motion at the close of all the evidence. The testimony of the defense witnesses — in particular Wolochowicz, who largely confirmed the testimony of the victim as to the events leading to the robbery — served to provide compelling support for the prosecution's case as to the robbery. Thus the judge's denial of the motion upon its renewal was correct.

*Judgment affirmed.*