COMMONWEALTH *vs.* JONATHAN CRICONES. October 13, 1981. When the first policeman, Comeau, reached the scene, he found the defendant Cricones lying on his back with a severe abdominal gunshot wound, in shock and on the edge of consciousness. Cricones was bleeding profusely and his intestines protruded from his wound. An ambulance crew arrived immediately behind Officer Comeau and while Cricones received first aid, Officer Comeau asked some questions of Cricones about who had shot him. Two other Lowell police officers arrived shortly thereafter. There was testimony at a suppression hearing which supported the judge's findings that the setting was one of turmoil and that one Cody, who had

called for help, muttered "upstairs" to the two officers who had entered the house last. Those officers proceeded to look around upstairs. They searched the rooms, the closets, and under the beds for a hidden person. In a bedroom which turned out to be the defendant's, the police found in the open (and hence in plain view) weighing scales, white powder and loose marijuana. That discovery triggered an investigation which led to four indictments against the defendant for possession of controlled substances and possession of controlled substances with intent to distribute them. Upon those indictments the defendant was found guilty.

The defendant attacks the warrantless search of the house to which the police had been called, emphasizing the burden placed on the government to justify such a search by *Commonwealth* v. *Antobenedetto*, 366 Mass. 51, 57 (1974), and relying on limitations placed on the exigency exception by *Commonwealth* v. *Forde*, 367 Mass. 798, 801-803 (1975). *Forde*, however, deals with a delay in obtaining a search warrant when the exigency is reasonably foreseeable. In the instant case, by contrast, the emergency existed as the police arrived upon the scene. A man had been shot, perhaps mortally. Although the victim said his assailants had fled he was not, in his severely wounded condition, an entirely coherent reporter of all that might have happened, and it was not unreasonable that the house might yield clues which would direct the investigation of the shooting. See *Commonwealth* v. *DiSanto*, 8 Mass. App. Ct. 694, 702 (1979). Nor is the case like *Selectmen of Framingham* v. *Municipal Court of the City of Boston*, 373 Mass. 783, 784-786 (1977), in which the police searched the victim's house about half an hour after the shooting occurred and after the doors and windows of the house had been secured. Rather, the facts are closer to those described in *Commonwealth* v. *Young*, 382 Mass. 448, 454-457 (1981). There the police came upon the scene of an apparent homicide and searched a building which appeared to be linked to the crime. Whether an exigency exists which justifies a warrantless search should be "evaluated in relation to the scene as it could appear to the officers at the time," not in terms of detached and "leisured retrospective analysis." *Id.* at 456. In the instant case, the gory wound and the panicked utterances of Cody produced an atmosphere of emergency and chase sufficient to warrant the police, as a practical duty, in searching the house. The search was not motivated by an intent to find evidence which would incriminate the defendant. See *People* v. *Mitchell*, 39 N.Y.2d 173, 177-179, cert. denied, 426 U.S. 953 (1976). Although there was some conflicting evidence about the events which induced the police to conduct their preliminary search, in the absence of clear error we do not substitute our findings of fact for those of the trial judge. *Commonwealth* v. *Moon*, 380 Mass. 751, 755-756 (1980), and cases cited.

*Judgments affirmed.*

*Andrew J. Zaroulis* for the defendant.

*Kevin J. Ross*, Legal Assistant to the District Attorney, for the Commonwealth.