COMMONWEALTH *vs.* JOHN P. ROSE. February 24, 1982. After hearing the evidence on the indictments for assault and battery (G. L. c. 265, § 13A), of which the defendant was convicted, and assault with intent to rape (G. L. c. 265, § 24), of which the defendant was acquitted, the jury could have found the following facts. On the day the incident occurred, the defendant picked up the victim at 2:00 P.M. while she was hitchhiking from New Bedford to her home in Westport. During the balance of the afternoon and evening, both the defendant and the victim drank beer con-

sistently and the victim also imbibed a concoction of whiskey and lime juice called a Snakebite. Their itinerary that day took them in the defendant's car from New Bedford to Westport and back. Around 8:00 P.M. the two ended up at the defendant's apartment. When the defendant, a few hours and several beers later made an advance on the victim, he was rebuffed. He thereupon dragged her to his bedroom and beat her sufficiently to break her nose and to cause substantial head bruises, particularly around the eyes. He also locked one bracelet from a pair of handcuffs around the victim's right wrist. During this time the victim screamed and struggled and when the defendant attempted to put on the other handcuff, she screamed, "Rape." The defendant hit her a few more times then he stopped, shook his head and ran out of the apartment. A tenant living in a first floor apartment in the same building investigated the noise and encountered the victim — bloodied — coming down the stairs from the defendant's apartment. He brought the victim into his apartment from which, ultimately, he called the New Bedford police, without much encouragement from the victim, but with her consent.

The defendant concedes the struggle and handcuffs, but explains it occurred because the victim tried to pick his pocket while he was napping, preparatory to driving her home. The defendant agrees that he ran from his apartment when the victim cried rape and explains that he did so in confusion.

1. The defendant protests the admission of certain evidence which he claims should have been made available to him in accordance with a pretrial agreement concerning discovery.

(A) The Commonwealth had agreed to make physical evidence available for inspection upon twenty-four hours' notice. Defense counsel made such a request some time after April 16, 1980, and before the date of trial, June 2, 1980. We need not decide whether the Commonwealth was sufficiently diligent in finding the physical evidence, which was in the hands of a witness. The evidence in question consisted of handcuffs and a blood stained T-shirt. It was undisputed that the defendant had partially handcuffed the victim and that the victim was found with a handcuff on her right wrist. There was also ample evidence that the victim had been bloodied about the face, particularly the nose. There was nothing remarkable about the fact of blood spots on her T-shirt. That those blood stains were inconsistent with the victim's testimony that she was wearing a zippered sweat shirt over her T-shirt was fully explored by defense counsel. The defendant could not have suffered prejudice from the admission of the handcuffs and T-shirt in evidence. We have examined the T-shirt and there is nothing inflammatory about it. *Commonwealth* v. *Delaney*, 11 Mass. App. Ct. 398, 400-405 (1981). *Commonwealth* v. *Lapka, ante* 24, 29-31 (1982). *United States* v. *Myers*, 550 F.2d 1036, 1043 (5th Cir. 1977), cert. denied, 439 U.S. 847 (1978). See *Commonwealth* v. *Baldwin*, 385 Mass. 165, 175-177 (1982).

(B) As to the witness Robitaille, who assisted the victim immediately after the assault and telephoned the police, it appears the prosecutor advised defense counsel one and one-half months before trial that he would attempt to find the downstairs neighbor and call him as a witness. Defense counsel was in fact permitted a voir dire examination of Robitaille. His examination disclosed no surprises, and Robitaille was permitted to testify. The testimony was not damaging, let alone prejudicial. Indeed, it provided the basis for much of the defendant's closing argument, particularly the fact that the victim never explained the circumstances of her beating or mentioned a sexual assault, and the fact that the victim resisted calling the police until Robitaille urged it upon her three or four times.

(C) To the extent that the testimony of one of the arresting officers, Lopes, deviated from his written report, which had been made available to the defense, there was neither a violation of the pretrial discovery agreement nor the occasion for sanctions under Mass.R.Crim.P. 14(c) (2), 378 Mass. 880 (1979). Neither Mass.R.Crim.P. 14 nor Mass.R.Crim.P. 23, 378 Mass. 893 (1979), binds a witness precisely to his previous written statement. Nothing in the record suggests that the prosecution knew in advance that Lopes' testimony would vary from his report and, as we observe in the next paragraph, there was no essential variance. Contrast *Commonwealth* v. *Gilbert*, 377 Mass. 887, 893-895 (1979); *Commonwealth* v. *Baldwin*, 385 Mass. at 173 n.9 & at 173-177.

The deviation asserted consisted of Lopes' testifying that the victim, when interviewed by him, had said the defendant had "tried to rape her." In his report, Lopes had said the victim had told him that the defendant "all of a sudden . . . grabbed me and dragged me toward the bedroom. I started to scream after pleading with him for several minutes to let me go. He refused and hit me in the mouth . . . . He . . . stated that we were going to make it. He kept on saying let's make love don't fight it . . . . He continued to punch me and I started screaming rape . . . ." Lopes' report further said, "The victim was asked if he had tried to remove any of her clothing. She stated yes, her outer sweater. She stated that he kept telling her that they would be making it in bed." In the light of the details in the report, the summary statement by Lopes that the victim had reported that the defendant had tried to rape her did not introduce a variation from the substance of his written report. Contrast *Commonwealth* v. *Gilbert*, 377 Mass. at 894. The statements ascribed by Lopes to the victim in his report described an attempt to rape. Had Lopes hewed more closely to the language of the report, his testimony would have been more damaging to the defendant than it was. That the paraphrase employed by Lopes did not damage the defendant is borne out by the jury's having acquitted him of assault with intent to rape.

2. Police observations about blood in the defendant's apartment were obtained in the course of a warrantless search. The search, however, was made for the purpose of locating a key to the handcuffs by which the vic-

tim was partially bound. The key was found. It can hardly be said that the circumstances were not exigent. *Commonwealth* v. *Marchione*, 384 Mass. 8, 10 (1981). *Commonwealth* v. *Cricones*, 12 Mass. App. Ct. 953, 954 (1981).

3. The testimony of Lopes to the effect that the victim had said the defendant had tried to rape her was properly admitted as a fresh complaint. *Commonwealth* v. *Blow*, 370 Mass. 401, 404 (1976). That the victim in her testimony did not use those words is of no consequence since what she described was an attempt by the defendant to have sexual intercourse by overpowering her. The judge twice instructed the jury that they were to consider Lopes' testimony as to what the victim said only for purposes of corroboration. The defendant did not request a charge that the complaint be considered only in connection with the indictment for intent to rape. *Id.* at 406. There was no error.

*Judgment affirmed.*

*Paul J. McCawley* for the defendant.

*Raymond P. Veary, Jr.*, Assistant District Attorney, for the Commonwealth.