COMMONWEALTH vs. ROBERT GICHEL.

No. 98-P-113.

Norfolk. September 9, 1999. - November 15, 1999.

Present: ARMSTRONG, GILLERMAN, & PORADA, JJ.

*Rape. Child Abuse. Evidence,* Fresh complaint. *Practice, Criminal,* Required finding, Instructions to jury.

At the trial of indictments alleging sexual abuse of a child, any error in the admission of certain fresh complaint testimony did not create a substantial risk of a miscarriage of justice in light of the other evidence in the case and the judge's instructions to the jury [208-210], and error in the admission of other fresh complaint testimony that exceeded the scope of the victim's direct testimony was not shown to be prejudicial to the defendant [210-211].

At the trial of indictments alleging sexual abuse of a child, the judge erred in permitting the jury to consider the testimony of fresh complaint witnesses on indictments alleging posing a child in violation of G. L. c. 272, § 29A(*a*) and (*b*); however, no substantial risk of a miscarriage of justice arose where the fresh complaint testimony relating to the photographs was minimal and simply cumulative of particularly strong evidence against the defendant relating to the photographs. [211-212]

At the trial of indictments alleging rape and sexual abuse of a child, the evidence was sufficient to warrant the judge's denial of the defendant's motions for required findings of not guilty. [212-213]

At the trial of indictments, the judge's failure to instruct the jury on the factual basis for one of the rape indictments or to give a specific unanimity instruction did not create a substantial risk of a miscarriage of justice, where the jury by its questions to the judge demonstrated an understanding that their verdict had to be based on a single underlying event on which unanimity was required, and where there was evidence that the child victim had been subjected to continuous and repetitive acts of unnatural sexual intercourse for a period of six years. [213-214]

INDICTMENTS found and returned in the Superior Court Department on August 2, 1995.

The cases were tried before *Stephen E. Neel,* J.

*James Hammerschmith,* Committee for Public Counsel Services, for the defendant.

*William T. Harrington,* Assistant District Attorney, for the Commonwealth.

PORADA, J. From his convictions for rape of a child (six indictments); assault and battery (six indictments); and posing a child in a state of nudity and/or posing a child engaged in a sexual act (sixteen indictments), the defendant appeals. He asserts that the trial judge erred in admitting gap-filling fresh complaint testimony; in allowing the jury to consider fresh complaint testimony on the posing charges; in denying his motion for a required finding on two of the rape indictments; and in allowing the jurors to decide for themselves what incident was the basis of a rape indictment for which no bill of particulars had been furnished and in failing to give a specific unanimity charge as to that indictment. We affirm.

We summarize the pertinent evidence presented at trial. The victim, who was thirteen at the time of the trial and mildly retarded, testified that from age six to age twelve, the defendant, who was the victim's stepgrandfather, had engaged in various acts of sexual abuse upon her and had taken photographs of her in the nude and while she was engaged in sexual acts with another person. She alleged that those acts occurred principally in two vans owned by the defendant, who usually transported her to and from school. A friend of the defendant testified that he had observed the defendant on one occasion fondle the victim's breasts and on another occasion place his hands on the victim's vagina. The same friend testified that the defendant had shown him a photograph album that contained sexually explicit photographs of the victim. The friend subsequently reported the matter to a Stoughton police officer. As a result, the Stoughton police obtained a search warrant for the defendant's van and found, in a locked cabinet, which the defendant opened for them, the album containing the photographs. Upon his arrest, the defendant admitted to the police that he had taken the photographs and had fondled the victim's breasts, but denied that he had ever raped the victim. Two police officers questioned the victim on two separate occasions after the defendant's arrest. At the outset of the first interview, the victim denied that the defendant had done anything wrong, but after being informed by one of the officers that the defendant had admitted taking the photographs, the victim told the officers that the defendant had taken the photographs and described various sexual acts that the defendant had performed upon her. An

expert medical witness, who performed a physical examination of the victim, stated that the victim had tolerated her examination of the victim's vagina with a speculum well, which in her opinion was more common for a girl who had had sexual intercourse than one who had not. The expert also indicated that her examination of the victim revealed a one inch linear mark on the bottom of the victim's vagina, which could represent either a developmental variance or scarring.

The defendant testified at the trial. He denied that he had raped or indecently touched the victim in any way. He also denied taking the photographs but admitted that he had told the police he had done so, and had showed them how one of the photographs, with his head in the victim's genitals, could have been taken. He explained that he made those admissions to the police because he was unaware of how serious the charges were and thought the police would get him help and allow him to return home to his wife. He also opined that his friend who testified against him had done so because they had had a falling out a couple of months before his arrest. The defendant suggested that it was the victim's father who had taken the pictures because he had a key to his van and the cabinet in it. A clinical and forensic psychologist testified for the defendant and explained how improper questioning could lead a child to testify to events that had not actually happened.

We now address the defendant's claims.

1. *Fresh complaint testimony.* The defendant argues that two fresh complaint witnesses were permitted to testify to details about four separate events which exceeded the permissible scope of the victim's testimony. In three of those instances, the defendant concedes that he did not object to this evidence on this ground. We thus review each of those instances to determine whether an error occurred and, if so, whether it resulted in a substantial risk of a miscarriage of justice. *Commonwealth* v. *Lamontagne*, 42 Mass. App. Ct. 213, 219 (1997). In the fourth instance, the defendant did object so our review in that matter will focus on whether the defendant was prejudiced by the admission of this evidence. *Commonwealth* v. *Flebotte*, 417 Mass. 348, 351-353 (1994). We now address separately the four events.

(a) *Natural sexual intercourse.* The defendant argues that the fresh complaint witnesses quoted the victim as saying that the defendant had, in fact, put his penis in her vagina, while the

victim herself had testified to no more than that the defendant had tried to put his penis in her vagina. While fresh complaint testimony need not match the victim's testimony exactly, it is impermissible for a fresh complaint witness to testify about details of an event that the victim had not testified to more generally. *Commonwealth* v. *Scanlon*, 412 Mass. 664, 670 (1992).

On direct examination, the victim testified: "[The defendant] would touch me down below [in an area called my vagina] [and when he touched me there] most of the time it would be his fingers. . . . Once before, . . . [h]e tried to put his penis in . . . my vagina." When asked if the defendant put his penis in her vagina, she answered, "I don't remember." The two fresh complaint witnesses testified that the victim said that the defendant had put "his pee pee in my pee pee place." Although the fresh complaint testimony adds a detail to which the victim did not testify, we do not think that it exceeds the permissible scope of her general testimony, which described the defendant, a 350-pound male, touching her vagina with his penis in an attempt to insert it in her. Cf. *Commonwealth* v. *Kirkpatrick*, 423 Mass. 436, 444-445 & n.6, cert. denied, 519 U.S. 1015 (1996) (no error where child complainant testified to an attempt at anal intercourse while fresh complaint testimony indicated actual anal intercourse had occurred); *Commonwealth* v. *Baldwin*, 24 Mass. App. Ct. 200, 204-205 (1987) (evidence was sufficient to establish penetration where child complainant testified that the defendant had tried to put his penis in her for about ten minutes but had not succeeded and she could not remember whether he had inserted his finger in her while rubbing Vaseline in her vagina).

In any event, even if there was error in the admission of this testimony, we perceive no substantial risk of a miscarriage of justice. The fresh complaint evidence on this event was not particularly inflammatory and there was other evidence from which a rational fact finder could infer that the defendant had engaged in sexual intercourse with the victim, namely medical evidence suggesting that the victim had been subjected to sexual intercourse and evidence of a pervasive sexual relationship between the victim and the defendant. In addition, the judge carefully instructed the jury, both at the time of its admission and again during his charge, of the corroborative purpose of fresh complaint testimony and that it could not be used as

substantive evidence or to fill gaps in the prosecution's case, see *Commonwealth* v. *Licata*, 412 Mass. 654, 660 (1992), admonitions which the jury are presumed to have understood and followed. *Commonwealth* v. *Quegan*, 35 Mass. App. Ct. 129, 135 (1993).

(b) *Cunnilingus.* The defendant argues that the victim never testified that he touched or penetrated her vaginal area with his tongue, yet both fresh complaint witnesses were permitted to testify as to such statements by the victim. At trial, the victim was shown a photo depicting a man's head in a female's vaginal area. The victim testified that the head depicted in the photo was the defendant's. This was her only testimony relating to this event. We, therefore, conclude that the fresh complaint testimony of the witnesses did exceed the permissible scope of the victim's testimony.

There was, however, no substantial risk of a miscarriage of justice. The indictment in question charged the defendant with placing his mouth on the genital or vaginal area of the victim, not the insertion of his tongue in the victim's vagina. The defendant admitted to the police that it was his head which was depicted in the photograph. In light of this evidence and the photograph, which was an exhibit, coupled with the judge's ameliorating instructions noted above, there is minimal risk of a miscarriage of justice from the admission of this evidence.

(c) *Touching of the breasts.* The defendant asserts that the victim never testified that the defendant kissed her breasts, yet the two fresh complaint witnesses were permitted to testify that the victim told them that he had. In light of the fact that the victim had testified generally that the defendant had touched her breasts, see *Commonwealth* v. *Scanlon*, 412 Mass. at 670-671, we do not think that this fresh complaint testimony went beyond the permissible scope of the victim's testimony. In any event, there was no miscarriage of justice where there was other evidence from the police that the defendant had admitted kissing the victim on her breasts at least six times. In addition, as noted, the judge's ameliorating instructions would have lessened any risk of a miscarriage of justice.

(d) *Sexual contact with a dog.* Finally, the defendant contends that, over his objection, the fresh complaint witnesses were permitted to testify that the victim told them that her dog licked her on the breasts and between her legs, and one witness was permitted to testify that the dog's actions were under the direc-

tion of the defendant. The victim, however, simply testified that the dog had licked her in the vagina while the defendant was present. Although the judge indicated that he would sustain the objection to the comment that it was at the direction of the defendant, the comment was not stricken. The defendant argues that although there was no indictment based on this event, the testimony was so prejudicial that it brought the accusations against the defendant to a new level. While we agree that the fresh complaint testimony relating to the dog should not have been admitted, we do not conclude it constitutes reversible error. This evidence was insignificant compared with the strength of other evidence offered by the Commonwealth in this case. We are certain that the error did not sway the jury or had but very slight effect. *Commonwealth* v. *Alphas*, 430 Mass. 8, 13-14 & n.7 (1999).

In sum, we conclude that any errors in the admission of the fresh complaint testimony, when viewed individually or collectively, do not warrant reversal in light of the strength of the Commonwealth's case against the defendant based upon other evidence of his guilt.[1]

2. *Posing charges.* The defendant claims that the judge erred in permitting the jury to consider the testimony of the fresh complaint witnesses on the sixteen indictments charging him with posing a child in violation of G. L. c. 272, § 29A(*a*) and (*b*). At trial, the two fresh complaint witnesses testified to statements made to them by the victim regarding the photographs. The defendant neither objected to this testimony nor to the judge's failure to instruct the jury that the fresh complaint testimony could not be considered in regard to the posing charges. Our review is thus limited to a determination whether a substantial risk of a miscarriage of justice was created.

Fresh complaint testimony has historically been limited to cases involving sexual assaults. See *Commonwealth* v. *Bailey*, 370 Mass. 388, 391-397 (1976); *Commonwealth* v. *Licata*, 412 Mass. at 657-660; *Commonwealth* v. *Peters*, 429 Mass. 22,

---

[1] The defendant also claims that the judge should not have permitted fresh complaint testimony relating to certain uncharged bad acts, which he specifically identifies as the defendant's kissing of the victim's breasts, the touching of the victim's vaginal area and breasts by the dog at the direction of the defendant, and the taking of photographs of the victim engaged in sexual intercourse with the defendant's stepgrandson. For the reasons cited in the text of our decision, there was either no error in the admission of this evidence or no risk of a substantial miscarriage of justice.

27-28 (1999). Although the sixteen indictments arguably may be characterized as having sexual overtones, the proscribed conduct of photographing a child in the nude or engaged in a sexual act, see *Commonwealth* v. *Oakes*, 407 Mass. 92, 97-98 (1990), clearly does not constitute a sexual assault. We are, thus, unwilling to expand the doctrine beyond the present, permissible use of this testimony, which continues to be a recurrent concern of the Supreme Judicial Court. *Commonwealth* v. *Peters*, 429 Mass. at 26-28.

The Commonwealth argues, however, that it was not error to admit this testimony because the fresh complaint testimony on the posing charge was part of the same criminal episode, namely a continuous course of sexual abuse of the victim. See *Commonwealth* v. *Blow*, 370 Mass. 401, 403-406 (1976); *Commonwealth* v. *Moreschi*, 38 Mass. App. Ct. 562, 565-566 (1995). Unlike the sexual and nonsexual crimes in the *Blow* and *Moreschi* cases, there was no evidence of a temporal connection between the taking of the photographs and the sexual assaults on the victim. Indeed, the photography and the sexual abuse spanned a period of time running from the time the victim was six years old until she reached her twelfth birthday.

The judge also did not instruct the jury that this evidence could not be used to corroborate the victim's testimony relating to the photographs. As noted, the defendant did not request any such instruction. See *Commonwealth* v. *Blow*, 370 Mass. at 406 (defendant, if requested, entitled to an instruction that the evidence can only be used for corroboration of the sexual assault). We thus reject the Commonwealth's argument.

Nevertheless, we do not conclude that its admission resulted in a substantial risk of a miscarriage of justice. The fresh complaint testimony relating to the photographs was minimal and was simply cumulative of particularly strong evidence against the defendant relating to the photographs, namely the defendant's own admission that he took the photographs, his ownership of the van and possession of the key to the cabinet in the van in which the photographs were found, the victim's own direct testimony, and the defendant's display of the photographs to his friend, who testified for the Commonwealth. Cf. *Commonwealth* v. *Moreschi*, 38 Mass. App. Ct. at 566-567.

3. *Motions for required findings.* The defendant argues that the judge should have allowed his motion for a required finding of not guilty on the indictment charging natural sexual

intercourse. He asserts that it would be an unjustified straining of the victim's testimony to prove the necessary element of penetration. *Commonwealth* v. *Cobb,* 26 Mass. App. Ct. 283, 286 (1988). Although the victim had testified simply that the defendant had touched her vagina with his penis in an attempt to insert it in her, intrusion into the vagina is not required to prove penetration; just a touching of the vulva or labia is sufficient. *Commonwealth* v. *Baldwin,* 24 Mass. App. Ct. at 204-205. In light of the victim's testimony; the comparative size of the victim and the defendant, a 350-pound male; the pervasive sexual relationship between the two; and the unlikelihood that a child of the victim's age and mental capability would possess the vocabulary or precision about her body parts that many adults do not have, we think this evidence and the reasonable inferences that could be drawn therefrom were sufficient to prove penetration. See *Commonwealth* v. *Nylander,* 26 Mass. App. Ct. 784, 786 (1989) (testimony of a five year old that defendant touched her "private spot" with his "private spot" and demonstration of this for the jury with an anatomical doll sufficient to infer penetration). See also *Commonwealth* v. *Moniz,* 43 Mass. App. Ct. 913, 914 (1997), and cases collected therein.

The defendant also asserts that a motion for a required finding of not guilty should have been allowed as to one of the indictments charging the commission of fellatio, because the evidence was insufficient to establish that it occurred more than once. Viewing the evidence in the light most favorable to the victim, *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979), the judge did not err in denying the motion. Although the victim testified that she did not remember how many times the defendant's penis touched her mouth, she did testify that "[s]ometimes he would put it in my mouth and stuff would come out." She also testified that the last time this occurred was when she was twelve years old. This evidence was sufficient for a rational fact finder to infer that this act occurred more than once.

4. *Failure to instruct the jury on the factual basis for one of the statutory rape indictments or to give a specific unanimity instruction.* The defendant argues that a substantial risk of a miscarriage of justice was created when the judge on indictment number 100391, charging the defendant with the commission of natural or unnatural sexual intercourse, failed to specify the alleged act on which this indictment was based and failed to give

a specific unanimity instruction. Although the Commonwealth had furnished a bill of particulars for five of the six indictments charging statutory rape and the judge specifically referred to the underlying acts set forth in the bill of particulars in charging the jury as to each of those five indictments, the judge and trial counsel did not realize the omission of a bill of particulars for this indictment until the jury, in the course of their deliberations, brought it to the court's attention by inquiring what specific act formed the basis for the indictment. The judge, with agreement of counsel, simply instructed the jury that they were to rely on their collective memories and his prior instructions on the law. Defense counsel now argues that this instruction violated the defendant's right to due process because his conviction could have been based on an act for which he was not indicted[2] or on a nonunanimous verdict.

In *Commonwealth* v. *Kirkpatrick*, 423 Mass. at 439-444, in one indictment, the Commonwealth set forth ten counts of forcible rape of a child, which tracked the statutory language of G. L. c. 265, § 22A. As in this case, the victim in the *Kirkpatrick* case testified to a continuous and repetitive pattern of differing types of sexual abuse by a member of her household but otherwise spoke in generalities. In those circumstances, the Supreme Judicial Court ruled that the prosecution was not required to specify the exact acts on which each count rested and there was no risk of a nonunanimous verdict. Similarly, in this case no risk of a violation of due process or nonunanimous verdict exists because the jury by its very questions to the judge revealed an understanding that their verdict had to be based on a single underlying event on which unanimity was required and there was evidence that the victim had been subjected to continuous and repetitive acts of unnatural sexual intercourse from age six to age twelve. *Commonwealth* v. *Kirkpatrick*, 423 Mass. at 442. *Commonwealth* v. *LaCaprucia*, 429 Mass. 440, 446-447 (1999).

*Judgments affirmed.*

---

[2]Our record does not contain the grand jury minutes.