### COMMONWEALTH *vs.* JOSEPH S. KING.

No. 01-P-1743.

Plymouth. November 20, 2002. - July 3, 2003.

Present: BECK, SMITH, & TRAINOR, JJ.

*Rape. Evidence,* Fresh complaint. *Practice, Criminal,* Mistrial.

At the trial of indictments charging the defendant with rape of a child, the judge erred in admitting in evidence fresh complaint testimony that exceeded the scope of the victim's trial testimony, but the testimony did not fill a gap in the Commonwealth's case and did not give rise to prejudice, where the victim's testimony addressed each of the elements of the crime of forcible rape of a child. [493-496]

At the trial of indictments charging the defendant with rape of a child, the defendant failed to show that the judge abused his discretion in denying the defendant's motion for a mistrial made after the victim's mother testified that she had gone to the police after another child's physical, where the comment appeared to be a fleeting reference to a point in time and nothing more, and was neither inherently inflammatory nor suggestive of anything improper. [496-497]

INDICTMENTS found and returned in the Superior Court Department on July 19, 1999.

The cases were tried before *Richard J. Chin,* J.

*Nona E. Walker,* Committee for Public Counsel Services, for the defendant.

*Mary E. Lee,* Assistant District Attorney, for the Commonwealth.

TRAINOR, J. Joseph King appeals from his convictions for forcible rape of a child, arguing that he was prejudiced by improperly admitted fresh complaint testimony and that he was entitled to a mistrial due to the prejudicial impact of certain other testimony. We affirm the judgments.

1. *Facts and procedural history.* A jury could have found the following facts. The defendant, a longtime friend of the victim's

parents, moved into the basement of their home in March of 1999. At the request of the parents, the defendant babysat for the victim, Nathan,[1] then six years old, and his two sisters on a number of occasions, including several weekend mornings while the parents looked at property in another town. During the first week of June, 1999, Nathan's mother noticed that he was "whiny" and clingy, and that he sought to sleep with his parents, which he had not done since he was younger.

On June 5, 1999, the defendant was home with Nathan, Nathan's sisters, and the defendant's own daughter, while the parents ran errands. When the parents returned, Nathan was lying on their bed, seemed distracted, and told them he was not feeling well. When the mother told Nathan that she and Nathan's father were going to look at property the next day, Nathan told her that he did not want to be left alone with the defendant and became upset. His parents decided to take all three children with them. During the family's excursion the next day, Nathan told his mother that he did not want to be left with the defendant anymore and that the defendant had put his mouth on Nathan's penis.[2] Nathan's mother told his father about the disclosure; when they returned to their house, they told the defendant they wanted to talk to him. The defendant removed his belongings from the house, left with his daughter in his truck, and did not return. Nathan's mother spoke with the police approximately ten days later.

As a result of Nathan's disclosures, King was indicted on two counts of forcible rape of a child, G. L. c. 265, § 22A, and two counts of indecent assault and battery on a child, G. L. c. 265, § 13B. After a jury trial in March of 2001, the judge allowed the defendant's motion for required findings of not guilty only with respect to the indecent assault and battery charges. The jury convicted the defendant on both rape charges.

2. *Fresh complaint.* At trial, Nathan (then eight years old) testified that he and the defendant would play video games in the family's living room. He testified that, while he was playing

[1]A pseudonym.

[2]According to Nathan's mother, Nathan used the phrase "hurt spot" to describe his penis, because in an earlier bicycle accident he had injured his penis.

video games, the defendant pulled down Nathan's clothes and "put his mouth on my hurt spot." Nathan testified that the defendant had done this several times when his parents were not at home. Nathan told the defendant he did not want him to do that. The defendant did not answer. The prosecutor asked Nathan if the defendant had told him that something would happen to him if he told anyone, Nathan responded, "No." Asked if there was a reason he did not tell anyone, Nathan responded, "No." Nathan testified, however, that when the defendant thought he (Nathan) had done something wrong, such as being too noisy in the house, he would have to stand in the corner, a punishment also imposed at times by his parents and his aunt.

Nathan's mother testified as a fresh complaint witness. She testified that Nathan appeared "scared" at the time he told her that he did not want to be left with the defendant anymore and that the defendant had put his mouth on Nathan's penis. She testified that Nathan told her that he had tried to tell the defendant to stop, but that the defendant would not. She further testified that Nathan had told her that the defendant "would punish him," specifically, "[t]hat if [the defendant] couldn't put his mouth down there, then [Nathan] would have to stand in the corner or couldn't play [video games]."

The defendant argues on appeal that the mother's testimony that the defendant had threatened Nathan was improperly admitted because it contradicted Nathan's testimony, and because it exceeded the scope of proper fresh complaint testimony. In particular, he argues, the mother's testimony impermissibly supplied an explanation for Nathan's failure to report the assault at an earlier time.

Massachusetts, unlike many other jurisdictions, allows a witness to testify not only to the fact of a complaint but also to the details of the complaint. *Commonwealth* v. *Lavalley*, 410 Mass. 641, 643 (1991). "By the 'details,' we mean that the witness may testify to the complainant's statements of the facts of the assault." *Commonwealth* v. *Quincy Q.*, 434 Mass. 859, 874 (2001). There are, however, limits to the content of fresh complaint testimony. "While fresh complaint testimony need not match the victim's testimony exactly, it is impermissible for a fresh complaint witness to testify about details of an event

that the victim had not testified to more generally." *Commonwealth* v. *Gichel*, 48 Mass. App. Ct. 206, 209 (1999). Fresh complaint testimony is limited in scope to those acts testified to by the complainant, but it is not limited as to the details of those acts. *Commonwealth* v. *Flebotte*, 417 Mass. 348, 351 (1994). We agree that the mother's testimony that the defendant threatened Nathan exceeded the scope of his trial testimony, and was erroneously admitted. We do not, however, agree that the improper testimony requires reversal.

The defendant objected to the admission of this evidence. We therefore determine whether the error was prejudicial. See *Commonwealth* v. *Flebotte*, *supra* at 353. The defendant argues that the testimony was improper because it was used to fill a gap in the prosecution's case. See *Commonwealth* v. *Bailey*, 370 Mass. 388, 396 (1976). Specifically, the defendant argues that the mother's testimony was used for the impermissible purpose of explaining Nathan's failure to report the sexual assaults at an earlier time. See *Commonwealth* v. *Aspen*, 53 Mass. App. Ct. 259, 267 (2001). We are not persuaded that the mother's testimony filled a gap in the prosecution's case in this respect, or that it gave rise to prejudice. The mother did not testify that Nathan was threatened by the defendant not to report the assaults. Rather, she testified that Nathan was threatened into *allowing* the assaults. Moreover, the timing of Nathan's report of the assault was never an issue at trial. Nathan reported the assaults to his mother while the defendant was still living in his house and while the assaults were ongoing.

Fresh complaint testimony cannot be used to fill a gap in the prosecution's proof of the essential elements of the crime. See *Commonwealth* v. *Bailey*, 370 Mass. at 396. The mother's testimony did relate to the element of lack of consent, when she testified that Nathan had been threatened by the defendant. Nathan's own testimony, however, addressed each of the elements of the crime of forcible rape of a child, including lack of consent. He testified that the defendant pulled his clothes down. He testified that the defendant put his mouth on his penis. He testified that he told the defendant he did not want him to put his mouth on his penis. See *Commonwealth* v. *Tatro*, 42 Mass. App. Ct. 918, 920-921 (1997) (jury instructions that consent

was not an issue because of the child's age was reversible error); *Commonwealth* v. *Haynes*, 45 Mass. App. Ct. 192, 201-202 (1998) (lack of consent is an element of the crime that must be proved). See also Nolan & Sartorio, Criminal Law § 225 (3d ed. 2001). The mother's testimony was not needed, nor was it used, to fill a gap or add material evidence lacking in Nathan's testimony. Therefore, it was not needed to satisfy the prosecution's burden of proof on any element of the crime. Compare *Commonwealth* v. *Scanlon*, 412 Mass. 664, 672 (1992) (no prejudicial error where improper fresh complaint testimony did not relate to an element of the crime of indecent assault and battery). Additionally, a fresh complaint instruction was given prior to the mother's testimony, and again during the final charge, instructing the jury that her testimony was admitted only for corroborative purposes. See *Commonwealth* v. *Morais*, 431 Mass. 380, 385 (2000).

The erroneously admitted testimony neither filled a gap in the prosecution's case nor inflamed the jury. We conclude, therefore, with fair assurance and because of Nathan's clear and articulate testimony, that the erroneously admitted evidence had very slight or no effect on the jury. See *Commonwealth* v. *Gichel*, 48 Mass. App. Ct. at 209. See also *Commonwealth* v. *Scanlon*, 412 Mass. at 672. Contrast *Commonwealth* v. *Kerr*, 36 Mass. App. Ct. 505, 507-508 (1994).

3. *Motion for mistrial.* During redirect examination, the mother was asked when she reported the incidents to the police. She first responded, "When Jennifer Haines . . . called me."[3] Moments later, when asked for the date, she responded, "June 12th." Following a brief bench conference, the mother was asked, "In terms of this date that you went to the Brockton police department, are you sure of the date that you went?" The mother replied, "No, I know it was right after my daughter's physical." The defendant objected and moved for a mistrial on the grounds that this impermissibly placed before the jury information that one of Nathan's sisters had also made allega-

---

[3]There was no explanation at that time (or subsequently) that the reference was to Jennifer Hayes, a Brockton police detective; the jurors had heard her identified as such the previous day during jury selection as one of a list of possible witnesses.

tions against the defendant.[4] The prosecutor responded that the mother was merely using the date as a point of reference and that the reference, in context, was benign. After reviewing the trial tape during recess, the judge denied the motion for mistrial, stating that he did not think the remark "stands out as something that the jury would consider as significant."

The decision to declare a mistrial is within the judge's discretion. See *Commonwealth* v. *Hoffer*, 375 Mass. 369, 372-373 (1978); *Commonwealth* v. *Simmonds*, 386 Mass. 234, 241 (1982). "It is the trial judge who is 'most familiar with the evidence and the background of the case on trial. He has listened to the tone of the argument as it was delivered and has observed the apparent reaction of the jurors.' Consequently, it is the trial judge who was best positioned to determine whether there was prejudice to the defendant." *Commonwealth* v. *Cohen*, 412 Mass. 375, 384 (1992), quoting from *Arizona* v. *Washington*, 434 U.S. 497, 514 (1978). The mother's testimony that she went to the police "right after my daughter's physical" appeared to be a fleeting reference to a point in time and nothing more. It was neither inherently inflammatory nor suggestive of anything improper within the context of the mother's testimony. There were no further references to the daughter's physical in the testimony of the mother or any other witness. Here, the judge, with appropriate caution, reviewed the recording of the mother's testimony and concluded that there were no grounds for a mistrial. No showing of an abuse of discretion has been made by the defendant.

*Judgments affirmed.*

---

[4]Defense counsel explained to the judge at sidebar:

"There is an allegation of abuse against the daughter by this man, and it was after the investigation of the daughter that they then went back and made the allegations about the son, also."